**PHILLIPS & PAOLICELLI LLP**
Attorneys for Plaintiff, by:
Diane Paolicelli (DP3067)
Victoria E. Phillips (VP5452)
Michael DeRuve (MD1301)
747 Third Avenue, 6th floor
New York, NY 10017
Ph.      (212) 388-5100
Fax      (212) 388-5200
vphillips@p2law.com
dpaolicelli@p2law.com
mderuve@p2law.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PC-41 DOE,<br><br>                              Plaintiff,<br><br>vs.<br><br>POLY PREP COUNTRY DAY SCHOOL;<br>WILLIAM WILLIAMS;<br>MICHAEL NOVELLO,<br><br>                              Defendants. | **COMPLAINT**<br><br> Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by and through Plaintiff's attorneys, states and alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff PC-41 Doe was repeatedly and unlawfully sexually abused for years as a child while attending Defendant POLY PREP COUNTRY DAY SCHOOL ("POLY PREP").

2. Plaintiff's abuser was a POLY PREP employee named Philip Foglietta ("Foglietta").

3. Foglietta was a pedophile and sexual predator.

4. For decades, Foglietta served as a physical education teacher and coach at POLY PREP.

{00053853}

5. On information and belief, Foglietta sexually abused multiple students at POLY PREP between approximately 1966 and 1986.

6. Allegations that POLY PREP failed to adequately respond to reports of Foglietta's sexual abuse of students have been the subject of litigation in this Court.[1]

7. On information and belief, prior to, at the time of, and after Plaintiff's attending POLY PREP, Foglietta's abuse of students was brought to the attention of POLY PREP employees and administrators, including Defendants WILLIAMS and NOVELLO.

8. Defendants failed to fire, demand the resignation of, or otherwise remove Foglietta until years after Plaintiff graduated.

9. Defendants also did not report Foglietta to law enforcement for criminal investigation at any time.

10. On information and belief, Defendants' failure to fire or otherwise remove Foglietta prior to the 1990s was driven by a fear of litigation by Foglietta, and a fear of harming the reputation and finances of POLY PREP.

11. The sexual abuse that Plaintiff "PC-41 Doe" (hereinafter "Plaintiff") experienced at POLY PREP was profound and unlawful in nature.

12. Plaintiff's abuse by Foglietta occurred between approximately 1976 and 1983.

13. Plaintiff was abused as frequently as several times per week.

14. Plaintiff is identified pseudonymously in this Complaint to protect his identity, given the highly sensitive and personal subject matter alleged in this case.

15. Upon the appearance of counsel on behalf of Defendants, Plaintiff proposes to confidentially disclose the name of the Plaintiff to Defendants' counsel subject to a

---

[1] *Zimmerman v. Poly Prep Country Day Sch.*, Case No. 09-CV-4586 (FB) (CLP).

{00053853}

confidentiality order to maintain the confidentiality of the Plaintiff's identity throughout this litigation.

16. Such consent has routinely been received and such orders have been granted in numerous actions filed since the amended statute of limitations for sexual abuse actions, N.Y. Civil Practice Law and Rules §214-g, went into effect.

## JURISDICTION AND VENUE

17. Jurisdiction exists pursuant to 28 U.S.C. §1332(a), based upon complete diversity of citizenship of the parties and the amount in controversy, in that Plaintiff is a citizen of and is domiciled in the State of Oregon and Defendants are citizens of the States of New York, Florida, and Vermont.

18. Further, Plaintiff claims damages in this action in excess of $75,000.

19. Venue is proper pursuant to 28 U.S.C. 1391(b) in that all or a substantial part of the events or omissions forming the basis of these claims occurred in Kings County, New York, which is within the jurisdiction of this Court.

20. Further, POLY PREP is located in Brooklyn, New York.

21. Defendants WILLIAMS and NOVELLO both worked at POLY PREP in Brooklyn, New York at the time of the events, acts, and omissions alleged herein.

## PARTIES

### A. Plaintiff

22. Plaintiff is a citizen of, resides in, and is domiciled in the State of Oregon.

23. At the time period when the abuse described herein occurred, Plaintiff was a minor under the age of 18.

24. As a minor, Plaintiff attended POLY PREP in Brooklyn, New York.

25. This action is brought pursuant to the New York Child Victims Act, CPLR § 214-g.

26. The conduct at issue constituted a sexual offense against a minor in violation of Article 130 of the New York Penal Law, or a predecessor statute that prohibited such conduct at the time of the act, and resulted in physical, psychological, and emotional injuries.

27. As a civil cause of action concerning unlawful sexual abuse of a minor, the terms of the Child Victims Act, CPLR § 214-g, revive the claims set forth below.

## B. Defendants

28. Whenever reference is made to any Defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors.

29. In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, trustees, or other representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business or affairs.

30. At all times material, Defendant POLY PREP COUNTRY DAY SCHOOL ("POLY PREP") was and continues to be a private school organization or entity authorized to conduct business and conducting business in the State of New York, with its principal place of business at 9216 7th Avenue, Brooklyn, NY 11228.

31. At all relevant times, Defendant POLY PREP has been a school for students from 5th grade through 12th grade.

32. Defendant POLY PREP includes but is not limited to the organization and any other organization and/or entity operating under the same or similar name with the same or similar principal place of business.

33. On information and belief, Defendant WILLIAM WILLIAMS ("WILLIAMS") is an adult living in the state of Vermont at 12 STERLING SPRINGS DR., WHITE RIVER JUNCTION, VT 05001-2970.

34. On information and belief, Defendant WILLIAMS was POLY PREP's headmaster from approximately 1970 to 2000.

35. Defendant WILLIAMS was the headmaster for all of Plaintiff's years at POLY PREP.

36. On information and belief, Defendant WILLIAMS was among those responsible for the training, supervision, and disciplining of Foglietta, and acted in the course of his employment as an agent, servant, and/or employee of POLY PREP.

37. Defendant MICHAEL NOVELLO ("NOVELLO") was an administrator at POLY PREP during Plaintiff's years as a student at POLY PREP.

38. On information and belief, Defendant NOVELLO served as the head of the Middle School at POLY PREP at all material times, including between 1972 and 1983.

39. On information and belief, Defendant NOVELLO was among those responsible for the training, supervision, and disciplining of Foglietta, and acted in the course of his employment as an agent, servant, and/or employee of POLY PREP.

40. On information and belief, Defendant NOVELLO resides in Florida at 7914 ROYAL BIRKDALE CIR 4, LAKEWOOD RANCH, FL 34202-2529.

## FACTUAL ALLEGATIONS

41. Defendant POLY PREP is a private college preparatory school for fifth through twelfth grade students, located in Brooklyn, New York.

42. Plaintiff attended POLY PREP from approximately fifth through twelfth grade in the 1970s and 1980s.

43. Defendant POLY PREP had custody of Plaintiff and accepted the entrustment of Plaintiff and, therefore, had responsibility for Plaintiff and authority over Plaintiff.

44. Defendant POLY PREP placed Foglietta in positions where he had access to and worked with children including Plaintiff as an integral part of his work.

45. Plaintiff came in contact with Foglietta as an agent and representative of POLY PREP.

46. Plaintiff, as a minor and vulnerable child, was dependent on Defendant POLY PREP.

47. Foglietta is now deceased.

48. From approximately 1966 through 1991, Foglietta was employed as a physical education teacher and coach at Defendant POLY PREP or otherwise employed by Defendant POLY PREP.

49. While employed at POLY PREP, Foglietta met, had contact with, and supervised younger students at POLY PREP attending physical education classes.

50. While employed at POLY PREP, Foglietta also met, had contact with, and supervised older students on the football and basketball teams at POLY PREP.

51. Foglietta was a pedophile and sexual predator including during his years working at POLY PREP.

52. On information and belief, Foglietta unlawfully sexually abused multiple students at POLY PREP between approximately 1966 and 1986.

53. On information and belief, Foglietta sexually abused some students on hundreds of occasions.

54. Plaintiff was among the students Foglietta sexually abused at POLY PREP.

55. Foglietta was Plaintiff's PE teacher at POLY PREP in approximately 5th through 7th grades.

56. Plaintiff also was a member of the football team under Foglietta's supervision at POLY PREP including in high school.

57. The sexual abuse that Plaintiff experienced on school premises at POLY PREP was profound in nature.

58. Plaintiff's unlawful sexual abuse as a POLY PREP student occurred between the years of approximately 1976 and 1983.

59. Foglietta repeatedly sexually abused Plaintiff, sometimes as often as several times per week.

60. The sexual abuse of Plaintiff included but was not limited to Foglietta's touching and fondling Plaintiff's buttocks and genitals, and penetrating Plaintiff's anus with his fingers.

61. In approximately 1979-80, Plaintiff told a POLY PREP homeroom and music teacher, known to Plaintiff as Mr. Michael Morangelli, about Foglietta's inappropriate conduct.

62. Plaintiff was told that his report about Foglietta's behavior would be looked into.

63. On information and belief, POLY PREP did not conduct a thorough investigation of Plaintiff's complaint regarding Foglietta.

64. Foglietta was not fired, removed, or made to resign during Plaintiff's years at POLY PREP.

65. On information and belief, Foglietta was not reported to law enforcement for criminal investigation by Defendants prior to or during Plaintiff's years at POLY PREP.

66. Foglietta remained employed at POLY PREP for over a decade after 1980.

67. Foglietta's sexually abuse of Plaintiff continued after Plaintiff reported his abuse by Foglietta.

68. Foglietta's unlawful sexual abuse of minors attending POLY PREP was not limited to Plaintiff.

69. For decades, Foglietta molested and sexually abused children attending POLY PREP.

70. Foglietta's abuse of students occurred before, during, and after Plaintiff's time as a student at POLY PREP.

71. Defendants knew or should have known of Foglietta's inppropriate behavior towards minors before Plaintiff began attending POLY PREP.

72. On information and belief, Defendants engaged in a pattern of denying Foglietta's conduct, concealing his abusive behavior, conducting sham investigations, and failing to disclose the risk that Foglietta posed to the student body, their parents, and alumni at POLY PREP.

73. On information and belief, Defendants' pattern of denial, sham investigations, failure to perform thorough investigations, and whitewashing Foglietta's conduct would support a finding of fraudulent concealment such as to toll the statute of limitations, even if the timeliness of claims such as Plaintiff's claim had not been revived by the Child Victim's Act.

74. Foglietta's employment at POLY PREP corresponded with the tenure of more than one headmaster and administrator.

{00053853}

75. J. Folwell Scull ("Scull") served as POLY PREP's headmaster until 1970.

76. Defendant WILLIAMS served as POLY PREP's headmaster from approximately 1970 to 2000.

77. On information and belief, Scull is deceased.

78. Following Defendant WILLIAMS, David Harman became POLY PREP's headmaster in approximately 2000.

79. On information and belief, Defendant NOVELLO was an administrator at POLY PREP with responsibilities including serving as the head of the middle or lower school at POLY PREP during Plaintiff's time as a student there.

80. On information and belief, in addition to POLY PREP's headmasters and NOVELLO, Foglietta also was supervised by Harlow Parker, the Athletic Director at POLY PREP from approximately 1949 until Parker's retirement in 1987.

81. Foglietta's unlawful and sexually abusive conduct, and POLY PREP's failure to respond adequately to multiple reports of his sexually abusing students, has been the subject of litigation in the Eastern District of New York[2].

82. Claims have been brought in this Court by multiple students against POLY PREP alleging that they were sexually abused by Foglietta.

83. Those plaintiffs alleged that Foglietta's misconduct spanned approximately two decades.

84. Those plaintiffs alleged that Foglietta's abuse was fraudulently concealed by POLY PREP despite numerous reports alerting POLY PREP to Foglietta's inappropriate behavior.

85. For instance, on information and belief, a student named William Jackson attended POLY PREP from approximately 1966 until 1968.

---

[2] *Zimmerman v. Poly Prep Country Day Sch.*, Case No. 09-CV-4586 (FB) (CLP).

86. On information and belief, in 1966, Jackson, an eighth grade student at POLY PREP, accompanied by his parents, met Headmaster Scull and Athletic Director Harlow Parker.

87. On information and belief, at that meeting, Jackson accused Foglietta of repeated sexual abuse, providing graphic details.

88. On information and belief, Jackson was told by the POLY PREP officials that he would face severe consequences if he persisted in accusing Foglietta of sexual misconduct.

89. On information and belief, what followed was a sham investigation in which POLY PREP failed to memorialize either the meeting or the supposed investigation.

90. POLY PREP continued to employ Foglietta for decades after 1966.

91. On information and belief, upon assuming the role of headmaster in 1970, Defendant WILLIAMS was advised of Jackson's earlier complaints.

92. On information and belief, in 1972, Foglietta attempted to sexually abuse a student at POLY PREP, a freshman John Marino.

93. On information and belief, Marino rebuffed Foglietta's advances.

94. On information and belief, Foglietta proceeded to physically, verbally, and emotionally abuse Marino until Marino graduated in 1976.

95. On information and belief, Marino saw Foglietta sexually abusing other boys on or near POLY PREP's grounds on at least ten occasions.

96. On information and belief, in 1973, Marino and his parents met with Defendant WILLIAMS and Mr. Parker, and Marino accused Foglietta of "fooling around with boys" in Foglietta's car on Battery Avenue.

97. On information and belief, at this 1973 meeting, Defendant WILLIAMS and Parker told Marino's parents that their son had started false and malicious rumors about Foglietta's abuse of children.

98. On information and belief, at this 1973 meeting, Defendant WILLIAMS and Parker told Marino's parents that Marino was undisciplined and a troublemaker.

99. On information and belief, Defendant WILLIAMS and Parker threatened to expel Marino if he continued to make such accusations.

100. In a deposition, Defendant WILLIAMS has acknowledged having had this meeting with Marino and his parents.

101. On information and belief, Defendants did not memorialize Marino's report in any way.

102. On information and belief, no contemporaneous investigation was conducted by Defendants into reports made by the Marino family.

103. On information and belief, Marino and his parents had a second meeting with Defendant WILLIAMS and Parker in 1974.

104. On information and belief, Marino again accused Foglietta of sexually abusing male students.

105. On information and belief, both Marino and his father reported that they had witnessed Foglietta sexually abusing a child at POLY PREP.

106. On information and belief, at this second meeting, Marino again was threatened with expulsion for behavior that included his continued allegations against Foglietta.

107. Defendants did not fire or otherwise remove Foglietta following Marino's and his family's complaints.

108.     Foglietta's sexual abuse of students at POLY PREP continued for years after Marino's reports.

109.     Defendant WILLIAMS has testified that he believed that he discussed Marino's accusations with Parker or Defendant NOVELLO.

110.     On information and belief, prior to and/or by the time of Plaintiff's abuse by Foglietta, Defendant NOVELLO had been advised of reports of Foglietta's sexually abusing students.

111.     On information and belief, Defendant NOVELLO did not take steps to promote an investigation of Foglietta prior to or during Plaintiff's years at POLY PREP.

112.     On information and belief, Defendant NOVELLO did not advocate for Foglietta's disciplining, removal, or firing prior to or during Plaintiff's years at POLY PREP.

113.     On information and belief, Defendants did not warn students, their parents, legal authorities, or the general public that Foglietta posed a risk of sexually abusing minors prior to or during Plaintiff's years at POLY PREP.

114.     On information and belief, in the mid-1970s, Defendant WILLIAMS received two anonymous letters that stated: "You need to know that Mr. Foglietta is doing terrible things to your students."

115.     Defendant WILLIAMS has testified that although he was concerned by the letters, he did not interpret them as sexual abuse -- despite the reports of Foglietta's abusing students from both Marino and Jackson.

116.     Defendant WILLIAMS testified that he showed one of the letters to Foglietta and told him:  If I find out that you are doing something that's abusing kids in any way, and I observe it, then — and you're not telling me now, then I'll fire you then.

117.     Defendant WILLIAMS claimed that he did not keep a copy of the letters or put a copy in Foglietta's file.

118.     Defendant WILLIAMS claimed that he did not retain the letters because he felt that the information could potentially damage Foglietta's reputation if the letters were misplaced and found by someone who should not have had access to them.

119.     Defendant WILLIAMS testified that he threw out the letters because "unsigned complaints should be tossed," and that he conducted no contemporaneous investigation into these letters' allegations.

120.     On information and belief, the receipt of these letters was not memorialized by Defendants until 2002.

121.     On information and belief, based on his initial memorialization of the receipt of these anonymous letters, Defendant WILLIAMS did believe that they contained accusations of sexual abuse.

122.     On information and belief, the May 27, 2002 first draft of a handwritten statement from Defendant WILLIAMS to David Harman, the Board of POLY PREP, and POLY PREP's outside counsel, stated that the anonymous letters were "from a parent accusing Coach Foglietta of molesting students."

123.     On information and belief, POLY PREP's Board of Trustees asked WILLIAMS to rewrite and edit this letter, after which time he "copied it over with leaving some things out."

124.     In the second draft, dated June 6, 2002, Defendant WILLIAMS rewrote the sentence above to read: "two unsigned letters from parents (possibly the same one) who reported that [] children had been abused by Coach Foglietta."

125.     On information and belief, roughly one year after receiving the anonymous letters, Defendant WILLIAMS received an anonymous phone call in which the caller utilized language similar to that found in the letters, such as: "he [is] doing terrible things to our kids."

126.     When examined at a deposition, Defendant WILLIAMS was unable to remember if an investigation was conducted after the call was received.

127.     When examined at a deposition, Defendant WILLIAMS again testified that, at the time, he had thought the accusations related to verbal, rather than sexual, abuse.

128.     On information and belief, Defendants did not contemporaneously memorialize the 1970s telephone call in any way.

129.     On information and belief, Defendants did not conduct any contemporaneous follow-up investigation respecting the telephone call.

130.     On information and belief, the events described above were merely some of the occasions on which POLY PREP and its employees or administrators were warned about Foglietta's inappropriate and unlawful behavior.

131.     A plaintiff called John Doe II in litigation before this Court also alleged that in 1972 or 1973, he told Robert Foreman, another POLY PREP administrator, that Foglietta was inappropriately grabbing boys.

132.     John Doe II further alleged that Parker saw him being abused by Foglietta in the boys' showers.

133.     The reports to POLY PREP staff by John Doe II, Jackson, and Marino, and the anonymous notes described above all pre-dated Plaintiff's abuse at POLY PREP as a student.

134.     These are merely some of the circumstances and events that placed Defendants on notice of Foglietta's inappropriate behavior towards POLY PREP students in the years leading up to Plaintiff's abuse at POLY PREP.

135.     There were ample red flags that should have placed Defendants on notice that Foglietta was abusing minors attending POLY PREP.

136.     Defendants knew or should have known about his abusive and unlawful behavior by the time that Plaintiff enrolled in POLY PREP.

137.     Had Defendants fired Foglietta, asked him to resign, and/or reported him to the legal authorities for criminal investigation prior to Plaintiff's enrollment at POLY PREP, Plaintiff would not have been abused by Foglietta.

138.     On information and belief, the many POLY PREP students who were abused by Foglietta include:

    a.   James Zimmerman, a plaintiff in prior litigation in this Court who attended POLY PREP from seventh grade until graduating in 1982;,

    b.   George Zarou, a plaintiff in prior litigation in this Court who attended POLY PREP from 1968, when he was in the fifth grade, until he left in 1972;

    c.   Philip Culhane, a plaintiff prior litigation in this Court, who attended Poly Prep from fifth grade until graduating in 1984, and was sexually abused by Foglietta on several occasions in the room adjacent to Foglietta's office;

    d.   John Doe II, a plaintiff in prior litigation in this Court, who started at POLY PREP as a fifth grader in 1968, attended until his sophomore year in 1974, and alleged that Foglietta abused him numerous times including on school grounds;

e. John Doe III, a plaintiff in prior litigation in this Court, who alleged that from 1968-1972 he was sexually abused by Foglietta including on school grounds approximately two times per week;

f. John Doe IV, a plaintiff in prior litigation in this Court, who attended POLY PREP from 1970 until graduating in 1974, and alleged that Foglietta sexually abused him in both the visiting team's locker room and in Foglietta's apartment;

g. David Hiltbrand, a plaintiff in prior litigation in this Court, who wrote to Defendant WILLIAMS in 1991, identified himself as a victim of abuse on several occasions by Foglietta in 1966, and advised WILLIAMS that he knew of other boys who were abused by Foglietta and named two witnesses to his own abuse;

h. John Paggioli, a plaintiff in prior litigation in this Court, who as a student at POLY PREP, and claimed to have been sexually abused by Foglietta two to three times per week on school grounds and once in Pagglioli's home between 1970 and 1974.

139.    At his deposition, Defendant WILLIAMS testified that although he had considered firing Foglietta, he had been worried about a lawsuit being initiated by Foglietta and about how alumni might react to the news.

140.    At his deposition in litigation in the Eastern District of New York, Defendant WILLIAMS conceded that he disposed of certain documents containing allegations of abuse.

141.    At his deposition in litigation in the Eastern District of New York, Defendant WILLIAMS was unable to articulate why he destroyed these documents containing allegations of abuse.

142.     On information and belief, it was not until 1991 that a decision was made not to renew Foglietta's contract.

143.     Defendant WILLIAMS testified that he informed the Board of POLY PREP of the decision not to renew Foglietta's contract.

144.     However, Defendant WILLIAMS testified that he may have told only a chairman of the Poly Prep Board of Trustees the actual reason for the decision.

145.     The actual reason for the decision not to renew Foglietta's contract in the 1990s was that WILLIAMS had received credible allegations that Foglietta had sexually abused a former student, Hiltbrand.

146.     Defendant WILLIAMS testified that he did not go to the authorities regarding the accusations against Foglietta because he believed that Hiltbrand would not testify against Foglietta.

147.     Defendant WILLIAMS believed Hiltbrand's allegations.

148.     However, Defendant WILLIAMS decided not to make a public statement or to disclose the accusations of abuse by Foglietta to POLY PREP's alumni.

149.     After Foglietta's retirement in 1991, an alumni event was hosted in Foglietta's honor at the Downtown Athletic Club.

150.     Defendant WILLIAMS testified that POLY PREP's alumni relations department most likely contacted alumni in order to sell tickets to the event.

151.     In or about 1998, Foglietta died.

152.     POLY PREP thereafter established the Philip A. Foglietta Memorial Fund in Foglietta's honor.

153.     POLY PREP sent out mailings and solicited contributions for the scholarship fund in Foglietta's name.

154.     In 2000, David Harman assumed the position of headmaster at Poly Prep.

155.     In May 2002, Harman received a letter from David A. Berger, Esq. ("Berger"), Hiltbrand's attorney, reiterating the accusations that Hiltbrand had made in his letter to Williams back in 1991.

156.     Harman responded to Berger that he had notified the Board of Berger's letter.

157.     Harman also indicated that Hiltbrand's earlier letter, along with two anonymous letters received when WILLIAMS was headmaster, were the only allegations of abuse that POLY PREP had ever received.

158.     As related above, that was inaccurate, since multiple students reported Foglietta's inappropriate and unlawful behavior to POLY PREP administrators and employees.

159.     Defendants had ample notice that Foglietta posed a risk to minor students prior to, at the time of, and after the time when Plaintiff was attending POLY PREP.

## FIRST COUNT

## NEGLIGENT HIRING, RETENTION, SUPERVISON, AND DIRECTION

160.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

161.     Prior to the sexual abuse of Plaintiff, Defendants learned or should have learned that Foglietta was not fit to work with or around children.

162.     Defendants, by and through their agents, servants and/or employees, became aware, or should have become aware of Foglietta's propensity to commit sexual abuse and of the risk to Plaintiff's safety.

163.     Defendants negligently retained Foglietta with knowledge of Foglietta's propensity for the type of behavior which resulted in Plaintiff's injuries.

164.     Plaintiff's abuse by Foglietta was readily foreseeable to Defendants.

165.     At all times mentioned herein, Defendants had a duty to exercise due care in hiring, appointing, assigning, retention, supervision and direction of staff including Foglietta, so as to protect minor children, including Plaintiff, who were likely to come into contact with him, and/or under his influence or supervision, and to ensure that Foglietta did not use his assigned position to injure minors by sexual assault, contact or abuse.

166.     At all times mentioned herein, Defendants were negligent and failed to use reasonable care in hiring, appointing, assigning, and retention of Foglietta, failed to properly investigate his background and employment history, and/or hired, appointed and/or assigned him to Defendants' school, when Defendants knew or should have known of facts that would make him a danger to children; and Defendants were otherwise negligent.

167.     At all times mentioned herein, Defendants were negligent and did not use reasonable care in their supervision and direction of Foglietta, failed to monitor his activities, failed to oversee the manner in which he carried out the duties to which Defendants assigned them, even though they knew or should have known that Foglietta posed a threat of sexual abuse to minors; allowed the misconduct described above to occur and continue; failed to adequately investigate Foglietta's dangerous activities and remove him from their premises; failed to have policies and practices in place that would have prevented this abuse; and Defendants were otherwise negligent.

168.     At all times herein mentioned, Foglietta would not have been in a position to sexually abuse Plaintiff had Defendants not been negligent in the hiring, retention, supervision, and direction of Foglietta.

169.     At all times mentioned herein, Foglietta acted in the course and scope of his employment with Defendants.

170.     At all times herein mentioned, Defendants' aforesaid actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

171.     As a direct and proximate result of the aforesaid misconduct, Plaintiff suffered grave injury, including physical, psychological and emotional injury as described above.

172.     By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

## SECOND COUNT

## NEGLIGENT, RECKLESS, AND WILLFUL MISCONDUCT

173.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

174.     At all times mentioned herein, Defendants affirmatively and/or impliedly represented to minor children, their families, and the general public that employees and agents working in POLY PREP, including Foglietta, did not pose a risk of sexually abusing children, and that children, including Plaintiff, would be safe in their care.

175. At all times mentioned herein, Defendants knew or should have known that this representation was false, and that employing Foglietta and giving him unfettered access to children, including Plaintiff, posed an unacceptable risk of harm to children.

176. At all times mentioned herein, Defendants owed a duty of care to keep students safe from sexual abuse by its employees, agents, and servants under their supervision and control, including Foglietta, to prevent the harm that ultimately affected the Plaintiff.

177. At all times mentioned herein, Defendants owed a duty of care to properly supervise their employees, agents, and servants under their supervision and control, including Foglietta, to ensure that students are not being abused on its premises.

178. At all times herein mentioned, Defendants carelessly, negligently, recklessly, willfully, and intentionally failed to have in place an appropriate policy and/or practice for making hiring, assignment, and retention decisions, so as to protect vulnerable students in their care from sexual abuse.

179. At all times herein mentioned, Defendants carelessly, negligently, recklessly, willfully, and intentionally failed to have in place an appropriate policy and/or practice to monitor, supervise, or oversee staff including Foglietta's interactions with minor students such as Plaintiff, in order to keep minors safe from sexual abuse.

180. At all times herein mentioned, Defendants breached their duties in a negligent, reckless, willful, wanton, and intentional manner and caused Plaintiff to be sexually assaulted.

181. The careless, negligent, reckless, wilful, and intentional misconduct by Defendants as described herein was done with utter disregard as to the potential profound

injuries that would foreseeably ensue, and with depraved indifference to the health and well-being of children.

182.    By the time of Plaintiff's abuse at POLY PREP, Defendants had been made aware of of and consciously ignored a substantial and unjustifiable risk that Foglietta's continued employment at POLY PREP would cause minor students to suffer sexual abuse resulting in emotional, psychological and/or physical injuries.

183.    As a direct and proximate result of Defendants' misconduct, Plaintiff suffered grave injury, including physical, psychological and emotional injury and damages as described above.

184.    By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

## THIRD COUNT

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

185.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

186.    The sexual abuse of Plaintiff was extreme and outrageous conduct, beyond all possible bounds of decency, atrocious and intolerable in a civilized world.

187.    Defendants' aforesaid negligent, grossly negligent and reckless misconduct, endangered Plaintiff's safety and caused him to fear for his own safety.

188.    Defendants knew or disregarded the substantial probability that Foglietta would cause severe emotional distress to minors including Plaintiff.

189.     As a direct and proximate result of Defendants' foregoing misconduct, Plaintiff suffered severe emotional distress including psychological and emotional injury as described above.

190.     By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

## FOURTH COUNT

## PREMISES LIABILITY

191.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

192.     At all times herein mentioned, Defendants owned, operated, and/or controlled the premises known as POLY PREP, including the areas where the sexual abuse of Plaintiff occurred.

193.     At all times herein mentioned, Plaintiff was rightfully present at the aforementioned premises.

194.     At all times herein mentioned, Defendants had a duty to see that the premises at which Plaintiff was rightfully present were in a reasonably safe condition for the intended use by students, like Plaintiff, whose presence was reasonably anticipated.

195.     At all times herein mentioned, Defendants willfully, recklessly, and negligently failed to provide a reasonably safe premises that was free from the presence of sexual predators and/or threats of sexual and physical assault by the occupants of the premises. Defendants thereby breached their duty of care of Plaintiff.

196.     As a direct and proximate result of Defendants' misconduct, Plaintiff suffered grave injury, including physical, psychological and emotional injury and damages as described above.

197.     By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

## FIFTH COUNT

## BREACH OF FIDUCIARY NON-DELEGABLE DUTY

198.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

199.     At all times herein mentioned, there existed a fiduciary relationship of trust, confidence and reliance between Plaintiff and Defendants.

200.     The entrustment of Plaintiff to the care and supervision of the Defendants while Plaintiff was a vulnerable child attending school, physical education, and extracurricular sports activities, imposed upon these Defendants a fiduciary non-delegable duty to act in the best interests of Plaintiff.

201.     Defendants were entrusted with the well-being, care, and safety of Plaintiff, which Defendants had a fiduciary duty to protect.

202.     By reason of the foregoing, Defendants breached their fiduciary duties to Plaintiff.

203.     As a direct and proximate result of Defendants' foregoing breach, Plaintiff suffered grave injury, including the physical, psychological and emotional injury and damages as described above.

204.    By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

## SIXTH COUNT

## BREACH OF DUTY *IN LOCO PARENTIS*

205.    Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

206.    At all relevant times, Plaintiff was a vulnerable child and student entrusted to the care of Defendants and was under the supervision and control of these Defendants, such that these Defendants owed him a duty to act *in loco parentis* and to prevent foreseeable injuries.

*207.*    By reason of the foregoing, Defendants breached their duties to act *in loco parentis.*

208.    As a direct and proximate result of Defendants' foregoing breach, Plaintiff suffered grave injury, including the physical, psychological and emotional injury and damages as described above.

209.    By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

## SEVENTH COUNT

## BREACH OF STATUTORY DUTIES TO REPORT

210.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

211.     Pursuant to N.Y. Soc. Serv. Law §§ 413 and 420, Defendants had a statutory duty to report reasonable suspicion of abuse of children in their care.

212.     Defendants breached their statutory duty by knowingly, willfully, and intentionally failing to report reasonable suspicion of sexual abuse by Foglietta.

213.     As a direct and proximate result of Defendants' foregoing breaches, Plaintiff suffered grave injury, including the physical, psychological and emotional injury and damages as described above.

214.     By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment on all of the preceding Counts as follows:

a.  Awarding Plaintiff compensatory damages for his injuries, in an amount in excess of $75,000, to be determined at trial;

b.  Awarding Plaintiff punitive damages for his injuries, in an amount in excess of $75,000, to be determined at trial;

c.  Awarding Plaintiff prejudgment interest, to the extent available by law;

d.  Awarding such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues triable by jury in this action.

DATED:     New York, New York
           August 12, 2020

Respectfully submitted
Phillips & Paolicelli, LLP
***Attorneys for Plaintiffs***

_____
*Victoria E. Phillips*

By:    Victoria E. Phillips
      Diane Paolicelli
      Michael DeRuve
      747 Third Avenue, 6th Floor
      New York, New York 10027
      212-388-5100
      vphillips@p2law.com
      dpaolicelli@p2law.com
      mderuve@p2law.com