UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

PC-41 DOE,                                          :
                                                    :
                            Plaintiff,              :      Civil Action No. 20-cv-03628-DG-SJB
                                                    :
              vs.                                   :
                                                    :
POLY PREP COUNTRY DAY SCHOOL;                       :      **ORAL ARGUMENT REQUESTED**
WILLIAM WILLIAMS;                                   :
MICHAEL NOVELLO,                                    :
                                                    :
                            Defendants.             :
                                                    :
-------------------------------------------------------- X


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT


Date of service:  December 18, 2020          **SEYFARTH SHAW LLP**

                                             Karen Y. Bitar
                                             Gershon Akerman
                                             Matthew Catalano
                                             Vladislava Feldman
                                             620 Eighth Avenue, 32nd Floor
                                             New York, NY 10018
                                             Tel. No.: (212) 218-5500
                                             Fax No.: (212) 218-5526
                                             kbitar@seyfarth.com
                                             gakerman@seyfarth.com
                                             mcatalano@seyfarth.com
                                             vfeldman@seyfarth.com

                                             *Attorneys for Defendants*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

LEGAL STANDARD......................................................................................................... 4

ARGUMENT ..................................................................................................................... 5

I.      THE CVA'S REVIVAL PROVISION IS UNCONSTITUTIONAL UNDER
        NEW YORK'S DUE PROCESS CLAUSE. ........................................................... 5

        A.      New York's Due Process Protections Are Older and Stricter Than Their Federal
                Counterparts. ............................................................................................... 6

        B.      New York Courts Require a Revival Statute to "Remedy an Injustice"—Which
                Has Always Involved Remedying Circumstances that Made Timeliness Physically
                Impossible. ................................................................................................. 8

        C.      The CVA Unconstitutionally Purports to Revive Claims That the Court of
                Appeals Has Already Ruled Could Have Been Timely Brought.......................... 11

        D.      Recent, Non-binding Trial Court Decisions Upholding the CVA Were Wrongly
                Decided. ..................................................................................................... 13

        E.      The CVA Is Not a "Reasonable Response to Remedy an Injustice" Given Its
                Unfairness to Defendants. ............................................................................ 16

II.     ALL OF PLAINTIFF'S CLAIMS MUST BE DISMISSED, IN WHOLE OR IN
        PART, AGAINST ALL DEFENDANTS BECAUSE THE COMPLAINT FAILS
        TO STATE ANY CLAIM. ................................................................................... 18

        A.      Plaintiff's Failure to Plead Actual or Constructive Notice by Poly Prior to Hiring
                Foglietta is Fatal to His Claim of Negligent hiring............................................ 18

        B.      Plaintiff Fails to State Any Separate Claims of "Negligent, Reckless, and Willful
                Misconduct," "Premises Liability," and "Breach of Duty in loco parentis." ....... 21

        C.      Plaintiff's Claim of Breach of Fiduciary Non-delegable Duty Fails for Multiple
                Reasons. ..................................................................................................... 25

        D.      Plaintiff's Claim for Negligent Infliction of Emotional Distress Cannot Be
                Sustained. ................................................................................................... 27

        E.      Plaintiff's Claim Alleging Breach of a Statutory Duty to Report Cannot Survive
                As a Matter of Law. ..................................................................................... 29

       1.     Plaintiff Cannot State a Claim Under N.Y. Soc. Serv. Law §§ 413 & 420. ...................................................................................... 29

       2.     In Any Event, This Claim is Time-Barred and Not Revived Under the CVA. ............................................................................... 31

III.   MOST OF PLAINTIFF'S MULTIPLE TORT CLAIMS FAIL FOR THE ADDITIONAL REASON THAT THEY ARE ALL IMPERMISSIBLY DUPLICATIVE. ................................................................................... 32

IV.   THE COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY AS AGAINST NOVELLO FOR FAILING TO STATE A SINGLE FACTUAL ALLEGATION CONCERNING ANY NEGLIGENT CONDUCT BY HIM. ......................................... 34

CONCLUSION.................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afifi v. City of New York*,
   104 A.D.3d 712 (2d Dep't 2013) ............................................................33

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010) .................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................4, 34

*AXA Mediterranean Holding, S.P. v. ING Ins. Int'l, B.V.*,
   106 A.D.3d 457 (1st Dep't 2013) ..........................................................22

*Balsam v. Delma Eng'g Corp.*,
   139 A.D.2d 292 (1st Dep't 1988) ..........................................................23

*Bauver v. Commack Union Free School Dist.*,
   No. 10-13877, 2014 WL 1867328 (Sup. Ct., Suffolk Cty. May 1, 2014) ..............33

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................4, 34

*Bevelacqua v. Brooklyn Law School*,
   No. 500175/2012, 2013 WL 4082674 (Sup. Ct., Kings Cty. Apr. 22, 2013) ..........25

*Burgos v. Aqueduct Realty Corp.*,
   92 N.Y.2d 544 (1998) .......................................................................22

*Campaign for Fiscal Equity, Inc. v. State*,
   100 N.Y.2d 893 (2003) ......................................................................15

*Campbell v. Brentwood Union Free Sch. Dist.*,
   904 F. Supp. 2d 275 (E.D.N.Y. 2012) ....................................................24

*Carabello v. New York City Dep't of Educ.*,
   928 F. Supp. 2d 627 (E.D.N.Y. 2013) ....................................................28

*Chagnon v. Tyson*,
   11 A.D.3d 325 (1st Dep't 2004) ...........................................................20

*Chainani by Chainani v. Bd. of Educ. of City of New York*,
   87 N.Y.2d 370 (1995) .....................................................................26, 27

*Chase v. Donaldson,*
   325 U.S. 304 (1945) ........................................................................................7

*Cobb v. WDF Inc.,*
   No. 160090/2016, 2019 WL 2902146 (Sup. Ct., N.Y. Cty. July 5, 2019) ............................20

*Deb B. v. Longwood Cent. Sch. Dist.,*
   165 A.D.3d 1212, 1213 (2d Dep't 2018) ..........................................................21, 23

*Deutsch v. Masonic Homes of California, Inc.,*
   164 Cal. App. 4th 748 (2008) ...............................................................................12

*Dillon v. City of New York,*
   261 A.D.2d 34 (1st Dep't 1999) ...........................................................................28

*Doe A. v. Diocese of Dallas,*
   234 Ill. 2d 393, 917 N.E.2d 475 (2009) ................................................................12

*Doe v. Crooks,*
   364 S.C. 349 (2005) .........................................................................................13

*Doe v. Hartford Roman Catholic Diocesan Corp.,*
   317 Conn. 357 (2015) ....................................................................................9, 12

*Elbogen v. Esikoff,*
   266 A.D.2d 15 (1st Dep't 1999) ...........................................................................28

*Ferguson v. City of New York,*
   988 N.Y.S.2d 207 (2d Dep't 2014) .......................................................................23

*Gallewski v. H. Hentz & Co.,*
   301 N.Y. 164 (1950) ..................................................................................*passim*

*Giuffre v. Dershowitz,*
   No. 19-cv-3377, 2020 WL 2123214 (S.D.N.Y. Apr. 8, 2020) ...................................13, 14, 15

*Goldsmith v. Howmedica, Inc.,*
   67 N.Y.2d 120 (1986) .........................................................................................7

*Gomez-Jimenez v. New York Law School,*
   103 A.D.3d 13 (1st Dep't 2012), *leave to appeal denied,* 20 N.Y.3d 1093
   (2013) .........................................................................................................25

*Hamilton v. Beretta U.S.A. Corp.,*
   96 N.Y.2d 222 (2001) ........................................................................................24

*Herskovitz v. Equinox Holdings, Inc.,*
   No. 151065/2013, 2013 WL 2642956, at *8 (Sup. Ct., N.Y. Cty. June 3, 2013) ...................28

*Hierro v. New York City Hous. Auth.*,
   123 A.D.3d 508 (1st Dep't 2014) .......................................................................22

*Higgins v. Zenker Corp.*,
   No. 10-32193, 2019 WL 1504111 (Sup. Ct., Suffolk Cty. Mar. 26, 2019) ................21, 24, 32

*Hopkins v. Lincoln Tr. Co.*,
   233 N.Y. 213 (1922) (Cardozo, J.) ..............................................................8, 14

*Hymowitz v. Eli Lilly & Co.*,
   73 N.Y.2d 487 (1989) ..........................................................................8, 9, 10

*Jackson v. New York Univ. Downtown Hosp.*,
   69 A.D.3d 801 (2d Dep't 2010) ....................................................................19

*Jensen v. Gen. Elec. Co.*,
   82 N.Y.2d 77 (1993) ..............................................................................16

*Kelly v. Marcantonio*,
   678 A.2d 873 (R.I. 1996) ..........................................................................13

*Kenneth R. v. Roman Catholic Diocese*,
   229 A.D.2d 159 (2d Dep't 1996) ..................................................................19

*Kurtzman v. Bergstol*,
   40 A.D.3d 588 (2d Dep't 2007) ....................................................................25

*Lauer v. City of New York*,
   95 N.Y.2d 95 (2000) ............................................................................24, 28

*M.E.H. v. L.H.*,
   177 Ill. 2d 207, 685 N.E.2d 335 (1997) ..........................................................13

*Marmelstein v. Kehillat New Hempstead*,
   11 N.Y.3d 15 (2008) ..............................................................................29

*Marquez v. Presbyterian Hosp. in City of New York*,
   608 N.Y.S.2d 1012 (Sup. Ct., Brx. Cty. 1994) ....................................................17

*McCann v. Walsh Const. Co.*,
   306 N.Y. 904 (1954) ..........................................................................8, 9, 10

*McDonagh v. Carmel Cent. Sch. Dist.*,
   170 A.D.3d 1161 (2d Dep't 2019) ..................................................................28

*Monaghan v. R.C. Diocese of Rockville Ctr.*,
   165 A.D.3d 650 (2d Dept 2018) ....................................................................30

*Moy v. Adelphi Institute, Inc.*,
    866 F. Supp. 696 (E.D.N.Y. 1994) ...................................................................26

*Murphy v. American Home Products Corp.*,
    58 N.Y.2d 293 (1993) ...................................................................................27

*NYAHSA Servs. Inc. v. People Care Inc.*,
    167 A.D.3d 1305 (3d Dep't 2018) ...........................................................32, 33

*Ozelkan v. Tyree Bros. Envtl. Servs.*,
    29 A.D.3d 877 (2d Dep't 2006) ......................................................................25

*Palka v. Servicemaster Mgmt. Servs. Corp.*,
    83 N.Y.2d 579 (1994) ...................................................................................23

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*,
    83 A.D.3d 804 (2d Dep't 2011) ......................................................................26

*Pinks v. Turnbull*,
    No. 100228/04, 2009 WL 4931802 (Sup. Ct., N.Y. Cty. Dec. 11, 2009)................24

*Pokoik v. Pokoik*,
    982 N.Y.S.2d 67 (1st Dep't 2014) ..................................................................25

*Poppel v. Estate of Archibald*,
    No. 1:19-CV-01403 (ALC), 2020 WL 2749719 (S.D.N.Y. May 27, 2020)....................19, 32

*Rabin v. Westchester Day School*,
    No. 63893/2019 (Sup. Ct., Westchester Cty., May 13, 2020) ............................22

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*,
    No. 1, 2020 N.Y. Slip Op. 02127, 2020 WL 1557900 (N.Y. Apr. 2, 2020)................... *passim*

*Robinson v. Robins Dry Dock & Repair Co.*,
    238 N.Y. 271 (1924) ................................................................................8, 9, 10

*Rosenberg v. Equitable Life Assur. Soc. of U.S.*,
    79 N.Y.2d 663 (1992) ...................................................................................27

*Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.*,
    33 A.D.3d 875 (2d Dep't 2006) ......................................................................20

*Schmidt v. Bishop*,
    779 F. Supp. 321 (S.D.N.Y. 1991) ..................................................................26

*Sheila C. v. Povich*,
    11 A.D.3d 120 (1st Dep't 2004) ................................................................21, 23

*Shor v. Touch-N-Go Farms, Inc.*,
    89 A.D.3d 830 (2d Dep't 2011) ...............................................................................19, 34

*Simpson v. Uniondale UFSD*,
    702 F. Sup. 2d 122, 134 (E.D.N.Y. 2010) ..............................................................27

*Somers v. Am. Airlines, Inc.*,
    No. 05-CV-2814 (SMG), 2010 WL 1459381 (E.D.N.Y. Apr. 13, 2010) .............................23

*Swartz v. Swartz*,
    145 A.D.3d 818 (2d Dep't 2016) .............................................................................26

*Thomas v. Bethlehem Steel Corp.*,
    63 N.Y.2d 150 (1984) ...............................................................................................16

*Torrey v. Portville Central Sch.*,
    No. 88476, 2020 WL 856432 (Sup. Ct., Cattaraugus Cty. Feb. 21, 2020) .................... *passim*

*Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*,
    10 A.D.3d 267 (1st Dep't 2004) ...............................................................................33

*Werner v. Diocese of Rockville Ctr.*,
    2020 N.Y. Misc. LEXIS 2003 (Sup. Ct., Nassau Cty. May 11, 2020) .......................13, 15, 16

*Westchester Rockland Newspapers, Inc. v. Leggett*,
    48 N.Y.2d 430 (1979) .............................................................................................7, 16

*White v. Cuomo*,
    181 A.D.3d 76 (3d Dep't 2020) ...............................................................................15

*Wiley v. Roof*,
    641 So. 2d 66, 69 (Fla. 1994)...................................................................................13

*Wilson v. Diocese of New York of Episcopal Church*,
    No. 96-cv-2400, 1998 WL 82921 (S.D.N.Y. Feb. 26, 1998) .................................................26

*Wolkstein v. Morgensten*,
    275 A.D.2d 635 (1st Dep't 2000) ...............................................................27, 28, 33

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    30 N.Y.3d 377 (2017) .......................................................................................8, 9, 10, 16

*In re Yolanda D.*,
    88 NY2d 790 (1996) .................................................................................................30

*Zimmerman et al v. Poly Prep Country Day School et al*,
    Case No. 09-CV-4586 (FB) (CLP) (E.D.N.Y.) .................................................17, 34

*Zimmerman v. Poly Prep Country Day School*,
888 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................................................................26

*Zumpano v. Quinn*,
6 N.Y.3d 666 (2006) ............................................................................. *passim*

**Statutes**

2020 N.Y. Misc. LEXIS 2003 at *12 .......................................................................15

2020 N.Y. Misc. LEXIS 2003 at *14 (quoting *Zumpano*, 6 NY3d at 677) .................15

Cal Code Civ Proc § 340.1 (c) .............................................................................12

Conn Gen Stat § 52-577d n. 4 ...........................................................................12

CPLR § 3016(b) ...........................................................................................25, 26

CPLR § 214(5) ...............................................................................................31

CPLR § 214-g ............................................................................................11, 31

Family Court Act Section 1012 .........................................................................30

N.Y. Soc. Serv. Law § 413 ............................................................................29, 30

N.Y. Soc. Serv. Law § 420 ...............................................................................29

New York Child Victims Act ....................................................................... *passim*

**Other Authorities**

Albany Law School Government Law Center and Rockefeller Institute of
Government, *Protections in the New York State Constitution Beyond the
Federal Bill of Rights*, https://www.albanylaw.edu/centers/government-law-
center/about/publications/Documents/Protections-in-the-New%20-York-State-
Constitution.pdf at 17 ....................................................................................6, 7

Charter of Liberties and Privileges, 1683, Section 15 (guaranteeing due process of
law), https://history.nycourts.gov/wp-
content/uploads/2019/01/Publications_Charter-Liberties-1683-Transcript-
compressed.pdf ..............................................................................................6

Fed. R. Civ. P. 5.1 ...........................................................................................6

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 4

Florida State Constitution .................................................................................13

Mandated Reporters of Child Abuse and Neglect - Nonpublic Schools in New
    York State, http://www.p12.nysed.gov/nonpub/running/qa-mandated-
    reporters.html (last visited December 18, 2020) ....................................................30

92 N.Y. Jur. 2d Religious Organizations § 90 (2020) .....................................................26

New York State Constitution ..................................................................1, 5, 6, 7, 12

New York Laws available at
    https://babel.hathitrust.org/cgi/pt?id=uc1.b4378138&view=1up&seq=1190 .........................30

Defendants, Poly Prep Country Day School ("Poly"), William Williams ("Williams"), and Michael Novello ("Novello") (collectively, "Defendants"), respectfully submit this Memorandum of Law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Due Process Clause of the New York State Constitution, to dismiss the Complaint, dated August 12, 2020 (the "Complaint" or "Compl."), in its entirety, and with prejudice.

## PRELIMINARY STATEMENT

Plaintiff, PC-41 ("Plaintiff"), alleges that, in the late 1970's and early 1980's, he was repeatedly sexually abused by non-party Philip Foglietta ("Foglietta"), a deceased, former football coach at Poly.  As set forth below, as abhorrent and unacceptable as Plaintiff's allegations of childhood sexual abuse may be, Plaintiff's Complaint should be dismissed in its entirety because (a) the CVA's revival window violates the Due Process Clause of the New York State Constitution and (b) in any event, Plaintiff's claims, asserted against Poly as an employer institution and as against the individual defendants based on their past positions at Poly, fail for the most part to satisfy the minimum pleading requirements for each claim asserted.

As an initial matter, the New York Child Victims Act ("CVA"), which allows this action to go forward, is unconstitutional. It impermissibly revives long-expired statutes of limitation in violation of Defendants' due process rights under the New York Constitution. This case provides a classic example as to why.  Forty years after the alleged wrongdoing, Poly is being asked to defend a case where Plaintiff's allegations have been kept silent for decades, as memories faded, evidence was lost, and where the alleged abuser—as well as most of those individuals that were alleged to have information concerning the alleged abuser—is deceased and can no longer be heard, cannot defend himself, and where his absence, and that of others, forecloses Poly from obtaining vital information relevant to its own defense.

But even if the Court were to reach the merits of Plaintiff's claims, the Complaint fails, for the most part, to state any claim against the Defendants as a matter of law.  As set forth below in detail, the Complaint fails to allege factual claims for, and necessary elements of, many of the seven distinct tort claims asserted and includes separate counts that are either not recognized under New York law and/or are not applicable, and thus insufficiently plead, under the circumstances alleged.  In addition, Plaintiff's multiple negligence claims, which are all based on the same exact factual allegations and seek the same exact relief, are impermissibly duplicative, impose duties on Defendants not proscribed by law, and, as set forth below, are otherwise insufficiently pled.

For all of these reasons, as well as for the reasons set forth below, it is respectfully submitted that Plaintiff's Complaint should be dismissed in its entirety, and with prejudice, as against all the Defendants.

## STATEMENT OF FACTS

Plaintiff commenced this diversity action pursuant to the CVA, which created a revival window for previously time-barred childhood sexual abuse claims.  (Compl. ¶¶ 25–27.)  In the Complaint, Plaintiff, who filed the Complaint under a pseudonym, alleges that, between 1976 and 1983, he was repeatedly sexually abused by Philip Foglietta, who was his PE teacher and football coach while he attended Middle and High School at Poly.  (Compl. ¶¶ 55–56, 58.)  Specifically, Plaintiff alleges that when he was in the 5th through 7th grades at Poly, Foglietta was his PE teacher (Compl. ¶ 55) and that he was also on the Poly football team coached by Foglietta, including when he attended high school (Compl. ¶ 56).  Foglietta died in or about 1998.  (Compl. ¶ 151.)

According to Plaintiff, Foglietta repeatedly sexually abused him, "sometimes as often as several times per week."  (Compl. ¶ 59.)  Plaintiff claims that "in approximately 1979-80" he "told a Poly Prep homeroom and music teacher, known to Plaintiff as Mr. Michael Morangelli, about

Foglietta's inappropriate conduct" and "was told that his report about Foglietta's behavior would be looked into" but that Poly did not conduct an investigation or fire Foglietta.  (Compl. ¶¶ 61–64.)  Plaintiff does not allege that he provided any notice to anyone else at Poly other than Michael Morangelli ("Morangelli"), the homeroom teacher, regarding his alleged abuse.  Plaintiff also does not allege that Morangelli told anyone else at Poly, including any Poly administrators, of Plaintiff's alleged report.

The Complaint also alleges that Foglietta abused other students at Poly "before, during, and after Plaintiff's time as a student at Poly Prep." (Compl. ¶ 70.)  The Complaint contains numerous allegations of alleged abuse by Foglietta to other Poly students.  (Compl. ¶¶ 81 *et seq.*)  According to the Complaint, these allegations regarding other students are based on claims asserted in a previous action filed against Poly in 2009 by other plaintiffs.  (*Id.*)

In addition to naming Poly as a defendant, the Complaint also names two individual defendants, Williams and Novello.  According to the Complaint, Williams was the "headmaster [at Poly] from approximately 1970 to 2000" (Compl. ¶ 76), and Novello "was an administrator at Poly Prep . . . serving as the head of the middle or lower school" (Compl. ¶ 79).  Novello held that position "at all material times, including between 1972 and 1983." (Compl. ¶ 38.)  According to the Complaint, based upon the claims asserted in a prior 2009 action, other students had reported sexual abuse by Foglietta to Williams and to former Headmaster J. Folwell Scull, now deceased, and former Athletic Director Harlow Parker ("Parker").[1]  (Compl. ¶¶ 86–87, 96–97, 114.)  Notably absent from the Complaint are any factual allegations regarding any prior notice or reports made to defendant Novello—regarding Novello, there is only a bare, conclusory claim that "On

---

[1] Although the Complaint does not say so, Parker is also deceased.

information and belief, prior to and/or by the time of Plaintiff's abuse by Foglietta, Defendant NOVELLO had been advised of reports of Foglietta's sexually abusing students." (Compl. ¶ 110.)

Based upon the foregoing allegations, the Complaint contains seven separate counts, as follows: (1) negligent hiring, retention, supervision, and direction; (2) negligent, reckless, and willful misconduct; (3) negligent infliction of emotional distress; (4) premises liability; (5) breach of fiduciary non-delegable duty; (6) breach of duty *in loco parentis*; and (7) breach of statutory duties to report.  The Complaint does not specify against which of the Defendants each of these claims is asserted.

## **LEGAL STANDARD**

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "plausible on its face" only when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  While a court must accept factual allegations as true at this stage, this tenet is inapplicable to conclusory allegations, unreasonable inferences or unwarranted deductions of fact contained in the pleading, and a pleading, like the Complaint, "that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 678 (quoting *Twombly* at 555); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  In other words, a complaint must contain more than an "unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  Rather, after stripping the "conclusory statements" in the complaint, the remaining factual allegations must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

**ARGUMENT**

I.    **THE CVA'S REVIVAL PROVISION IS UNCONSTITUTIONAL UNDER NEW YORK'S DUE PROCESS CLAUSE.**

In passing the CVA, the New York State Legislature—unquestionably with noble motives—exceeded its constitutional authority by including a revival provision so breathtakingly expansive that it violates the due process protections afforded to defendants under Article I, Section 6 of the Constitution of the State of New York (the "New York Constitution"). Under the CVA, so long as suit is filed within a one-year window that commenced August 14, 2019, civil tort claims for injuries resulting from a sexual offense committed against a minor, no matter how old, are revived. This revival provision applies to claims against not only alleged abusers—many of whom are now dead—but institutions whose alleged intentional or negligent acts or omissions resulted in the alleged sexual abuse.

The result has been a wave of claims which, if allowed to proceed, would eviscerate important due process rights enshrined in the New York Constitution—rights which are older, and more stringent, than the federal due process rights in the United States constitution. Furthermore, as the Court of Appeals has made clear, a century of New York State revival statute precedent reveals the "same pattern"—the legislature revives a limitations period in rare instances where a plaintiff had a total and complete inability to sue, and those revivals were upheld. The CVA is different. It involves revival of rights that the Court of Appeals has already determined *could* have been brought during the limitations period, but were not. In accordance with Court of Appeals precedent, and consistent with decisions in the highest courts of other states that have similarly stringent due process protections such as Illinois, South Carolina, Rhode Island, and Florida, the

Court must protect Defendant's due process rights by finding the CVA unconstitutional and dismissing the Complaint in this action.[2]

### A. New York's Due Process Protections Are Older and Stricter Than Their Federal Counterparts.

New York's interest in protecting due process predates the United States of America itself. *See* Charter of Liberties and Privileges, 1683, Section 15 (guaranteeing due process of law), https://history.nycourts.gov/wp-content/uploads/2019/01/Publications_Charter-Liberties-1683-Transcript-compressed.pdf. Indeed, "New York was the first state to add a due-process clause to its state constitution." Albany Law School Government Law Center and Rockefeller Institute of Government, *Protections in the New York State Constitution Beyond the Federal Bill of Rights*, https://www.albanylaw.edu/centers/government-law-center/about/publications/Documents/Protections-in-the-New%20-York-State-Constitution.pdf at 17. In particular, the New York Constitution, Article I, Section 6 reads, *inter alia*, "[n]o person shall be deprived of life, liberty or property without due process of law." That New York's due process protection has the same wording as the federal due process protections under the Fifth and Fourteenth Amendment is of no moment. "The fact that most of the rights protections found in the national Bill of Rights apply to the states does not render the state's bill of rights superfluous . . . New York's courts may interpret the state bill of rights to provide greater protection than the floor set by the U.S. Supreme Court's interpretation of the federal Bill of Rights." *Protections in the New York State Constitution* at 8. Over the years, New York's due process clause "has been used to invalidate many practices otherwise permissible under federal law[.]" *Id.* at 17.

---

[2] Pursuant to Fed. R. Civ. P. 5.1, Defendants have provided notice to the New York State Attorney General of its challenge under the New York State Constitution on November 20, 2020.  *See* ECF No. 14 and the accompanying Declaration of Karan Y. Bitar.  Under Fed. R. Civ. P. 5.1(c), the Attorney General may intervene within sixty days after that notice is filed, i.e., January 19, 2021, after which the Court is entitled to enter a final judgment holding the CVA unconstitutional.

New York's due process clause provides vital protections to defendants, who have the right to know what claims might be brought against them. *See Goldsmith v. Howmedica, Inc.*, 67 N.Y.2d 120, 124 (1986) (statutes of limitations offer protection against "potentially open-ended claims upon the repose of defendants and society").

"Although sometimes imposing hardship on a plaintiff with a meritorious claim, statutes of limitations reflect the legislative judgment that individuals should be protected from stale claims . . . They cannot be deemed arbitrary or unreasonable solely on the basis of a harsh effect." *Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (2006) (quotation and citation omitted) (declining to toll limitations period in pre-CVA child sexual abuse litigation). Where, as here, a revival statute might enjoy broad popular support, constitutional protections provide a bulwark against defendants losing their rights to a tyranny of the majority. As the Court of Appeals has explained, the "primary purpose of the Bill of Rights[3] and the corresponding provisions of the State Constitution is to insure the individual, particularly the unpopular individual, a measure of protection against oppression by a majority." *Westchester Rockland Newspapers, Inc. v. Leggett*, 48 N.Y.2d 430, 444 (1979).

---

[3] While the thrust of Defendants' argument is that the CVA's revival provision does not comport with the New York Constitution, Defendants do not concede that revival is permissible under the less stringent federal due process clause. Case law has over-read the United States Supreme Court's decision in *Chase v. Donaldson*, which held that revival is not a per se violation, but did not hold that revivals are *per se* valid. 325 U.S. 304, 315–16 (1945) ("Assuming that **statutes of limitation like other types of legislation could be so manipulated that their retroactive effects would offend the Constitution**, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment") (emphasis added).

**B.    New York Courts Require a Revival Statute to "Remedy an Injustice"—
Which Has Always Involved Remedying Circumstances that Made
Timeliness Physically Impossible.**

New York has developed its own, more stringent, body of case law when dealing with
whether a revival of a statute of limitations comports with New York's due process protections.
As the Court of Appeals recently re-iterated, "[f]or nearly a century, this Court has recognized that
'[r]evival is an extreme exercise of legislative power . . . .'" *Regina Metro. Co., LLC v. New York
State Div. of Hous. & Cmty. Renewal*, No. 1, 2020 N.Y. Slip Op. 02127, 2020 WL 1557900 at *14
(N.Y. Apr. 2, 2020) (quoting *Hopkins v. Lincoln Tr. Co.*, 233 N.Y. 213, 215 (1922) (Cardozo, J.)).
As explained by the Court of Appeals, "the development of our law on claim-revival statutes has
differed from the development of the federal rule." *In re World Trade Ctr. Lower Manhattan
Disaster Site Litig.*, 30 N.Y.3d 377, 394 (2017). While a claim-revival statute might or might not
be found acceptable under the Fourteenth Amendment of the United States Constitution depending
on whether the lapse of time had vested a party with a property interest, "[u]nlike the federal rule,
our state standard has not turned on this formal distinction between claim-revival statutes that
intrude upon a 'vested' property interest and those that do not. Rather . . . our cases have taken a
more functionalist approach, weighing the defendant's interests in the availability of a statute of
limitations defense with the need to correct an injustice." *Id.*

But when the Court discussed "the need to correct an injustice," it did not mean any abstract
unfairness faced by a plaintiff. Rather, the Court analyzed in depth four instances where it
previously held that revival of a statute of limitations was constitutional, *Robinson*, *Gallewski*,
*McCann*, and *Hymowitz*, and found that the "salient facts" in each of these cases fell "into the same
pattern." *Id.* at 399. When the Court then describes the "injustice" that binds these cases together,
it is apparent that the Court is referring to how, in each of these cases, a situation arose where
plaintiffs were faced with a total and complete, practical inability to bring their claims during the

allotted time. *See id.* at 399-400 ("[i]n *Robinson*, it was the plaintiffs' exclusive reliance on a provision of the workers' compensation law that was struck down by the United States Supreme Court . . .; in *Gallewski*, it was the occupation of the plaintiffs' countries of residence during World War II . . . ; in *Hymowitz* and *McCann*, it was latent injuries caused by harmful exposure, which the plaintiffs were not able to attribute to an action or omission of the defendant until the statutory period to bring a claim had already expired.") (internal citations omitted). The Court of Appeals re-iterated this tie in its April *Regina* decision, writing that "a claim revival statute withstands challenge under the Due Process Clause if it is a reasonable response in order to remedy an injustice [], such as remedying the plight of sick plaintiffs who were *unable to commence timely claims* because of the long period of latency between exposure and the manifestation of illness." *Regina*, 2020 WL 1557900 at \*14, n. 21 (internal quotations and citations omitted, emphasis added); *see also Doe v. Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 435, n. 58 (2015) (Analyzing New York law and noting that "New York's state and federal courts have applied the exceptional circumstances rule of *Gallewski* to uphold statutes reviving causes of action in a variety of cases wherein the plaintiff could not have brought an action in a timely manner."). In other words, in each of *Robinson*, *Gallewski*, *McCann*, and *Hymowitz*, there existed some outside set of circumstances that entirely prevented plaintiffs from bringing a timely claim.

*First*, in *Robinson v. Robins Dry Dock & Repair Co.*, a widow was caught up in changing laws that would have prevented her from seeking relief for her husband's wrongful death absent a revival statute. 238 N.Y. 271, 274 (1924). At the time of her husband's death, the widow's exclusive remedy was worker's compensation (which she applied for and received), but these benefits were cut off when the applicable worker's compensation statute was struck down as unconstitutional. *Id.* at 274-276. The statute of limitations for bringing a wrongful death had run,

but was revived by the legislature to permit plaintiffs like the widow to pursue relief, otherwise any relief for her husband's death would have been foreclosed. *Id.* The Court upheld the revival of her claim. *Id.; see also World Trade Center*, 30 N.Y.3d at 395 (citing *Robinson*).

      *Second*, in *Gallewski v. H. Hentz & Co.*, the plaintiff-decedent had lived in Nazi-occupied Europe, had been deported to a concentration camp and, by 1946, was presumed dead. 301 N.Y. 164, 168-169 (1950). His estate brought suit in connection with unauthorized financial transactions by his New York brokerage firm that took place after the invasion of his country, relying on a revival statute that retroactively permitted citizens of Axis-occupied countries to bring claims that arose during the period of such occupation. *Id.* at 174-175 . As in *Robinson*, the Court upheld the revival statute, noting that "revival -- even if it be considered an extreme exercise of the legislative power -- is entirely proper . . . The German occupation of its surrounding European nations and the allied blockade, as we know, resulted in a complete and thorough disruption of communication . . . residents of occupied territory were, during such occupation, under a **practical and total inability to commence action** . . . To permit the Statute of Limitations to run against their claims during the continuance of such inability would not accord with elementary notions of justice and fairness." *Id.* at 174-175 (emphasis added); *see also World Trade Center*, 30 N.Y.3d at 396 (citing *Gallewski*,).

      *Finally*, in *McCann v. Walsh Const. Co.*, 306 N.Y. 904, 905 (1954) and *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487 (1989) the Court upheld revival statutes that permitted plaintiffs to bring claims in connection with latent injuries where symptoms did not develop in time to bring a claim (in connection with "exposure to compressed air" in *McCann* and in-utero injuries from a drug taken by plaintiffs' mothers in *Hymowitz*). *See World Trade Center*, 30 N.Y.3d at 397-399. Read together, and as contextualized by the Court's *World Trade Center* and *Regina* opinions,

these four cases show that in every instance where the Court has upheld a revival statute to remedy an "injustice," such "injustice" was, as the *Gallewski* Court aptly puts it, plaintiffs' "practical and total inability to commence action in the courts of this State to protect and effectuate their rights." *Gallewski*, 301 N.Y. at 175.

### C.   The CVA Unconstitutionally Purports to Revive Claims That the Court of Appeals Has Already Ruled Could Have Been Timely Brought.

The CVA's revival provision, codified in CPLR § 214-g, is entirely different from the revival statutes previously upheld by the Court of Appeals. While in each of those cases, law, war, or the latency of symptoms rendered a plaintiff *unable* to sue, the Court of Appeals has already found that plaintiffs similarly situated to those now bringing suit under the CVA are not faced with an actual, literal impossibility to bring suit. In *Zumpano v. Quinn*, a case predating the CVA, the Court of Appeals rejected plaintiffs' argument that they should be permitted to bring claims in connection with allegations of sexual abuse that arose when they were minors. *Zumpano*, 6 N.Y.3d at 671. Plaintiffs' argument to attempt to toll the limitations period in *Zumpano* is remarkably similar to arguments raised by advocates of the CVA, including Plaintiff Zumpano's argument that he was "rendered incapable of protecting his legal rights" as a "direct result of defendants' abuse" on his psyche. *Id.* at 676-677. While the Court was plainly sympathetic with plaintiffs' cases, it expressly rejected any notion that plaintiffs were previously prevented from bringing those cases within the limitations period. *See id.* at 676 ("Plaintiffs possessed timely knowledge of the actual misconduct and the relationship between the priests and their respective dioceses to make inquiry and ascertain relevant facts prior to the running of the statute of limitations"); *see also id.* at 674 ("each plaintiff was aware of the sexual abuse he or she suffered at the hands of defendant priests. Certainly they had sufficient knowledge to bring an intentional tort cause of action against the individual priests. Plaintiffs were likewise aware that the priests were employees of the dioceses

and could have brought actions against the dioceses, or at least investigated whether a basis for such actions existed.").

Plaintiffs seeking to uphold the CVA's revival provision will likely make much of a comment made by the *Zumpano* Court, in dicta, that "[a]ny exception to be made to allow these types of claims to proceed outside of the applicable statutes of limitations would be for the Legislature, as other states have done." *Zumpano*, 6 N.Y. 3d at 677 (citing, in n. 4, Conn Gen Stat § 52-577d and Cal Code Civ Proc § 340.1 (c)). While the Court at first blush appears to be voicing its support for passage of a statute akin to the CVA, it must be remembered that neither the CVA nor any other legislation was then before the Court, and so the Court did not undertake any analysis of whether such legislation would comport with the due process clause of the New York Constitution. Moreover, the statutes that the Court cited to, which revived claims in Connecticut and California, are inapposite to any due process analysis that a New York Court would undertake, as both Connecticut and California's due process protections are coterminous with *federal* protections, and are not comparable with New York's more stringent protections. *See Hartford Roman Catholic Diocesan Corp.*, 317 Conn. at 435 (2015) (surveying state court decisions on revival statutes and finding that "decisions that follow the federal approach . . . are most consistent with our own body of case law in this area"); *Deutsch v. Masonic Homes of California, Inc.*, 164 Cal. App. 4th 748, 760 (2008) (relying on federal case law to uphold revival statute).

In contrast, if and when the CVA is squarely before the Court of Appeals, and the Court is fully briefed on the issues involved, it will likely look more closely at state court decisions involving state constitutional protections that, like New York's, go beyond those arising under the federal constitution. *See, e.g.*, *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 409, 917 N.E.2d 475, 484 (2009) (expiration of statute of limitations "cannot be taken away by the legislature without

offending the due process protections of our state's constitution") (quoting *M.E.H. v. L.H.*, 177 Ill. 2d 207, 214–15, 685 N.E.2d 335, 339 (1997)); *Doe v. Crooks*, 364 S.C. 349, 351-2 (2005) (revival of an action for which the limitations period has already expired "would violate the defendant's rights under the Due Process Clause of the South Carolina Constitution"); *Kelly v. Marcantonio*, 678 A.2d 873, 883 (R.I. 1996) ("legislation with retroactive features permitting revival of an already time-barred action . . . would offend a defendant's [state constitutional] due process protections"); *Wiley v. Roof*, 641 So. 2d 66, 69 (Fla. 1994) (under Florida State Constitution, "[o]nce barred, the legislature cannot subsequently declare that 'we change our mind on this type of claim' and then resurrect it.").

> ### D. Recent, Non-binding Trial Court Decisions Upholding the CVA Were Wrongly Decided.

While a handful of recent trial-level decisions which found the CVA to be constitutional, these decisions are not binding on this Court and were wrongly decided. Two of these cases, the S.D.N.Y.'s decision in *Giuffre v. Dershowitz* and the Cattaraugus County Supreme Court's decision in *Torrey v. Portville Central School*, contained cursory reasoning and were a product of cursory briefing, did not engage with key precedent such as the Court of Appeals *Zumpano* case, and wrongly deferred to the legislature rather than conducting judicial review of the CVA's constitutionality. *See Giuffre v. Dershowitz*, No. 19-cv-3377, 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020); *Torrey v. Portville Central Sch.*, No. 88476, 2020 WL 856432, at *4–5 (Sup. Ct., Cattaraugus Cty. Feb. 21, 2020). In addition, a set of nearly-identical decisions from the Nassau County Supreme Court, such as *Werner v. Diocese of Rockville Ctr.*, while providing more analysis than *Giuffre* or *Dershowitz*, came to the incorrect conclusions by relying too heavily on dicta in *Zumpano* while ignoring that case's holding. *See Werner  v. Diocese of Rockville Ctr.*, 2020 N.Y. Misc. LEXIS 2003, *15 (Sup. Ct., Nassau Cty. May 11, 2020).

13

In *Giuffre*, the S.D.N.Y. was not deciding a motion to dismiss, but rather a motion for leave to amend plaintiff's complaint to add, *inter alia*, a battery claim which would have been time-barred but for the CVA's claim-revival provision. 2020 WL 2123214 at *2. The Court, which noted the "liberal" standard for seeking to amend a complaint under the Federal Rules of Civil Procedure, *id.* at *1 (quotation omitted), rejected defendant's constitutionality challenge "for purposes of the instant motion," *id.* at *2. But even setting aside that the Court was looking to a lenient motion-to-amend standard, the Court's reasoning was flatly, demonstrably, wrong. In particular, the Court found that "the New York Courts' historical skepticism of claim-revival provisions appears to be just that: historical. While Justice Cardozo may have opined that claim revival is an 'extreme exercise of legislative power' nearly a century ago, that does not appear to be the prevailing view of such provisions in the here and now." *Giuffre*, 2020 WL 2123214 at *2 (quoting *Hopkins*, 233 N.Y. at 215). In so holding the Court demonstrated that it was unaware of the Court of Appeals' *Regina* decision, **which was issued less than a week before *Giuffre***, and which quoted and adopted Justice Cardozo's so-called "historical" language. *See Regina*, 2020 N.Y. Slip Op. 02127, 2020 WL 1557900 at *14 ("[f]or nearly a century, this Court has recognized that '[r]evival is an extreme exercise of legislative power . . . .'") (quoting *Hopkins*, 233 N.Y. at 215).

*Giuffre* and *Torrey* both also fail to be persuasive due to their cursory analysis. Neither Court in those cases mentions *Zumpano*, which—critically—held that plaintiffs making time-barred allegations of sexual abuse could have timely brought their claims. And notably, the Courts in both cases ultimately abdicate their responsibility to conduct judicial review, and instead improperly defer to the legislature. New York law is clear that "it is the role of the judicial branch 'to interpret and safeguard constitutional rights and review challenged acts of our co-equal

branches of government – not in order to make policy but in order to assure the protection of constitutional rights.'" *Regina*, 2020 WL 1557900 at *1 (quoting *Campaign for Fiscal Equity, Inc. v. State*, 100 N.Y.2d 893 (2003)). Thus *Giuffre* impermissibly deferred to the legislature in finding that "the CVA's claim-revival provision obviously reflects the New York State Legislature's desire to correct a perceived injustice . . . ." *Giuffre*, 2020 WL 2123214 at *2. Similarly, *Torrey* inappropriately limited its analysis to block-quoting the Legislative Memorandum of what would become the CVA and stating that the quoted justification was a "reasonable response to remedy an injustice," essentially deferring to the legislature without engaging in any independent analysis. 2020 WL 856432 at *5. *See White v. Cuomo*, 181 A.D.3d 76, 80 (3d Dep't 2020) ("We do not rule on the wisdom of the Legislature's enactment of laws, but on whether the N.Y. Constitution prohibited the Legislature from enacting such laws.").

Finally, the Nassau County Supreme Court's near-identical decisions in a set of cases brought against the Diocese of Rockville County, as exemplified in *Werner*, were also wrongly decided. These decisions give outsize importance to the dicta in *Zumpano*, asserting that the CVA "represents just such a legislative exception" purportedly called for by the *Zumpano* Court when it wrote that "[a]ny exception to be made to allow these types of claims to proceed outside of the applicable statutes of limitations would be for the Legislature . . . ." *Werner*, 2020 N.Y. Misc. LEXIS 2003 at *14 (quoting *Zumpano*, 6 NY3d at 677). As discussed *supra*, however, the question of the constitutionality of such a provision was not before the *Zumpano* Court, and *Zumpano*'s core holding—that plaintiffs' claims could have been timely brought—is fatal to the CVA's constitutionality when read in concert with the Court of Appeals' other decisions on claim-revival statutes. Furthermore, while the Nassau County Court makes much of the notion that New York courts have yet to strike down a claim-revival statute as unconstitutional, it disregards that none

of the cases pre-dating the CVA it relies upon involve claims that could have been timely brought. *Werner*, 2020 N.Y. Misc. LEXIS 2003 at \*12.

    **E.**    **The CVA Is Not a "Reasonable Response to Remedy an Injustice" Given Its Unfairness to Defendants.**

The trial-court cases discussed in the above section fail to protect the constitutional rights of unpopular defendants, despite the court's duty to do so even in the face of a popular majority. *Westchester Rockland Newspapers, Inc.*, 48 N.Y.2d at 444. These cases do so on the idea that the CVA is a "reasonable response to remedy an injustice." *See, e.g.*, *Torrey*, 2020 WL 856432 at \*4 (quoting *World Trade Center*, 30 NY3d at 400). But even if a "reasonable response to remedy an injustice" was meant to go beyond circumstances where a plaintiff had previously been *unable* to bring a claim, a reasonableness determination should include the *totality* of the circumstances, including fairness to defendants. *See Jensen v. Gen. Elec. Co.*, 82 N.Y.2d 77, 88 (1993) (balancing the "interests of injured parties" with fairness to defendants when interpreting applicability of statute of limitations, and finding in favor of defendants' interpretation.).

As the Court of Appeals recently noted in *Regina*, there is a "strong public policy favoring finality, predictability, fairness and repose served by statutes of limitations." *Regina*, 2020 WL 1557900, at \*14. This makes sense: "defendants are entitled to a fair opportunity to defend claims against them before their ability to do so has deteriorated." *Jensen v. Gen. Elec. Co.*, 82 N.Y.2d 77, 87 (1993) (quotations omitted). Because the CVA resurrects claims, some decades old, where documents and witnesses are long gone making defense impossible, it is not a reasonable response to remedy an injustice. *See Thomas v. Bethlehem Steel Corp.*, 63 N.Y.2d 150, 155 (1984) (rejecting retroactive application of amendment to workers' compensation law where "retroactive application would [] open the door to hundreds of stale claims the defense of which may, by virtue of the passage of time, now be impossible."). Indeed, revival of claims as to the alleged abuser in

this action, Philip Foglietta, is particularly prejudicial to Poly.  In 2012, Poly settled a lawsuit brought by twelve plaintiffs alleging sexual abuse by Foglietta.  *See Zimmerman et al v. Poly Prep Country Day School et al*, Case No. 09-CV-4586 (FB) (CLP) (E.D.N.Y.).  The lawsuit was public, received considerable press, and was openly discussed in the Poly community.  In making key strategic decisions regarding settling that litigation, Poly had operated entirely on the assumption that the then-present statute of limitation would apply, and would have likely made different strategic decisions had it known that the statute of limitations might be revived.

Defendants are, of course, sympathetic to the under-reporting of childhood sexual abuse cases that, in part, led to the passage of the CVA and similar statutes in other states. But that such cases have been historically under-reported does not mean that defendants' due process rights to rely on statutes of limitations should be made forfeit. Nor does it mean that plaintiffs were faced with a "practical and total inability to commence action," as were plaintiffs in cases where revival statutes were historically upheld. *See Gallewski*, 301 N.Y. at 175. While such incidents may have been underreported, it is indisputable that many civil lawsuits and criminal prosecutions alleging sexual abuse of a minor have been brought in the past half-century. *See, e.g.*, *Marquez v. Presbyterian Hosp. in City of New York*, 608 N.Y.S.2d 1012, 1013 (Sup. Ct., Brx. Cty. 1994) ("[t]he outrage of the sexual abuse of minors and the equally outrageous false allegation of sexual abuse, are both increasingly common . . ."). Furthermore, the Court of Appeals has already ruled that plaintiffs similarly situated to those now bringing claims under the CVA could have brought such cases within the limitations period. *See Zumpano*, 6 N.Y.3d at 676-677.

In light of the New York Constitution's stringent due process protections of Defendant's rights to rely on a statute of limitations, the CVA's revival provision should be found unconstitutional, and the Complaint in this action should be dismissed as untimely.  In the event

that the Court does not dismiss the Complaint based on a finding that the CVA's revival provision is unconstitutional, and the Court reaches the merits of Plaintiff's claims, Defendant respectfully submit that the Complaint should still be dismissed, based upon Plaintiff's failure to state a claim, for the reasons set forth below.

## II.   ALL OF PLAINTIFF'S CLAIMS MUST BE DISMISSED, IN WHOLE OR IN PART, AGAINST ALL DEFENDANTS BECAUSE THE COMPLAINT FAILS TO STATE ANY CLAIM.

As set forth below, all of Plaintiff's claims, alleging various theories of negligent conduct against all of the Defendants, should be dismissed, in whole or in part, because, as a matter of law, the Complaint fails sufficiently to plead necessary elements for these claims, or parts thereof. Accordingly, even if this Court is not willing to find that the CVA's revival statute is unconstitutional, the Complaint should still be dismissed for the reasons discussed below.

### A.   Plaintiff's Failure to Plead Actual or Constructive Notice by Poly Prior to Hiring Foglietta is Fatal to His Claim of Negligent hiring.

The First Count of the Complaint alleges negligent hiring (in addition to negligent retention, supervision and direction) against all defendants.  That part of the First Count that alleges negligent hiring must be dismissed against all defendants because the Complaint fails to allege a single factual claim regarding any notice by Poly, prior to hiring Foglietta in 1966, of a propensity by Foglietta to commit acts of sexual abuse.  Moreover, with regard to the individual defendants, Williams and Novello, the Complaint does not contain any factual allegations that they were

involved at all in hiring Foglietta.  To the contrary, according to the Complaint, both of them did

not serve in their respective positions at Poly until long after Foglietta was hired.[4]

Under New York law, "[t]o establish a cause of action based on negligent hiring, . . . it

must be shown that the [defendant] knew or should have known of the employee's propensity for

the conduct which caused the injury."  *Shor v. Touch-N-Go Farms, Inc.*, 89 A.D.3d 830, 831 (2d

Dep't 2011); *Jackson v. New York Univ. Downtown Hosp.*, 69 A.D.3d 801, 801–02 (2d Dep't

2010); *Kenneth R. v. Roman Catholic Diocese*, 229 A.D.2d 159, 161 (2d Dep't 1996) ("[A]

necessary element of [negligent hiring] is that the employer know or should have known of the

employee's propensity for the conduct which caused the injury."); *see also Poppel v. Estate of

Archibald*, No. 1:19-CV-01403 (ALC), 2020 WL 2749719, at *6 (S.D.N.Y. May 27, 2020)

(dismissing negligent hiring).

Thus, in order for Plaintiff's negligent hiring claim to survive a motion to dismiss,

Plaintiff's Complaint must contain factual allegations concerning an awareness by Poly prior to

hiring Foglietta in 1966 that Foglietta had a propensity to commit acts of sexual abuse.  Conclusory

and generalized allegations regarding Defendants' knowledge are insufficient to meet the pleading

standard.  *See, e.g.*, *Poppel*, 2020 WL 2749719, at *6 (dismissing negligent hiring claim where the

plaintiffs failed to "allege facts regarding [the alleged abuser's propensity to commit sexual abuse

---

[4] To be clear, Defendants are not seeking dismissal, *on the ground of failing to allege prior notice*, of that part of the First Count that alleges negligent retention, supervision and direction (except as to Novello—as set forth below Part IV.).  As so those portions of Plaintiff's First Count, the Complaint does contain factual allegations of alleged notice to certain individuals at Poly of alleged abuse by Foglietta after he was hired and already employed at Poly.  However, there is not a single factual allegation of notice by Poly of prior abuse by Foglietta before he was hired at Poly.

before he was hired"); *Chagnon v. Tyson*, 11 A.D.3d 325 (1st Dep't 2004) ("The cause of action for negligent hiring was properly dismissed in the absence of allegations . . . showing that defendants knew or should have known of such employees' propensity for the sort of conduct that caused plaintiff's injuries."); *Cobb v. WDF Inc.*, No. 160090/2016, 2019 WL 2902146, at *2 (Sup. Ct., N.Y. Cty. July 5, 2019) (dismissing claims against employer where plaintiff alleged negligent hiring, retention and entrustment, gross negligence and willful conduct, and punitive damages, because employer had "demonstrated that [it] [was] not on notice . . . of any negligent propensity of [employee]" and further "plaintiff ha[d] not proffered any evidence to substantiate facts which would have triggered a duty for [employer] to inquire further into [employee] before hiring him").

Furthermore, no inquiry into a prospective employee is required unless there is either actual or constructive notice regarding a relevant propensity.  *See Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.*, 33 A.D.3d 875 (2d Dep't 2006) ("[T]he duty to investigate a prospective employee . . . is triggered only when the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee for such acts" and therefore defendant was entitled to judgment as a matter of law because "the record . . . [did] not show that the [defendant] had any reason to request an employment history or background check" for the employee who was alleged to have committed the assault. (internal citations and quotations omitted)).

Here, that part of Plaintiff's claim alleging negligent hiring must be dismissed because Plaintiff does not allege any facts concerning an awareness by Poly prior to hiring Foglietta of any propensity of Foglietta to commit the types of acts alleged.  Plaintiff also does not claim or point to any information that Poly knew or could have known before hiring Foglietta that should have caused Poly either not to hire him or to conduct a background investigation. (*See* Compl. ¶¶ 160-72.)

Moreover, with regard to the individual defendants, Williams and Novello, the Complaint does not contain any factual allegations that they were involved at all in hiring Foglietta.  Nor could it because, to the contrary, according to the Complaint, both of them did not serve in their respective positions at Poly until long after Foglietta was hired.  (*Compare* Compl. ¶ 34 (alleging that Williams began serving as Headmaster in 1970) and Compl. ¶ 38 (alleging that Novello was the head of the Middle School starting in 1972) *with* Compl. ¶ 48 (alleging that Foglietta was hired in 1966).)

For this reason, that part of Plaintiff's First Count that alleges negligent hiring must be dismissed against all Defendants.

**B.     Plaintiff Fails to State Any Separate Claims of "Negligent, Reckless, and Willful Misconduct," "Premises Liability," and "Breach of Duty *in loco parentis*."**

Plaintiff's separately enumerated claims for  "negligent, reckless, and willful misconduct," "premises liability" and "breach of duty *in loco parentis*" all fail because Plaintiff cannot make out a separate claim of general negligence or premises liability in connection with alleged sexual abuse by Foglietta, a school employee, and because, under New York law, there is no independent cause of action for breach of duty *in loco parentis* or "negligent, reckless, and willful misconduct," which are standards of care not separate and independent tort claims.

With regard to negligent, reckless, and willful misconduct and premises liability, the standard of care for a negligence action against a school is that of an ordinary parent to prevent foreseeable harm, and that duty is breached only when the school had prior knowledge or notice of a relevant propensity by the alleged abuser.  Under New York law, there does not exist a stand-alone, absolute duty for a school to provide a safe and secure environment and prevent any crime from occurring.  *See, e.g.*, *Deb B. v. Longwood Cent. Sch. Dist.*, 165 A.D.3d 1212, 1213 (2d Dep't 2018); *Sheila C. v. Povich*, 11 A.D.3d 120, 125 (1st Dep't 2004); *Higgins v. Zenker Corp.*, No.

10-32193, 2019 WL 1504111 (Sup. Ct., Suffolk Cty. Mar. 26, 2019).   In a recent decision involving claims under the CVA against a private school, Justice Charles Wood addressed this very issue and held that a claim for "Negligent Failure to Provide a Safe and Secure Environment" is not a "recognizable cause of action."  *Rabin v. Westchester Day School*, No. 63893/2019 (Sup. Ct., Westchester Cty., May 13, 2020) (finding that "[t]here is also no authority to support that defendants had some special duty to take reasonable steps to anticipate threats from employees . . . toward the safety of plaintiff to protect plaintiff from injury" and further holding "that plaintiff's reliance on premises liability cases to support the viability of the [inadequate security] cause of action is misplaced"); *cf. AXA Mediterranean Holding, S.P. v. ING Ins. Int'l, B.V.*, 106 A.D.3d 457, 458 (1st Dep't 2013) ("The mere allegation that the alleged breach of contract was "maliciously intended" or constituted " willful  misconduct" does not render the breach of contract claim **a separate and independent tort claim**." (emphasis added)).

Thus, Plaintiff's separate claims for general negligence and willful conduct, and premises liability cannot be sustained.  To the extent that in opposition Plaintiff will seek to will rely upon cases for general propositions of premises liability and security measures required of landlords/property owners, those cases do not concern the duty of a school to prevent sexual abuse by an employee and are inapposite to this case.  *See Rabin*, No. 63893/2019, *supra*; *see also Burgos v. Aqueduct Realty Corp.*, 92 N.Y.2d 544, 551 (1998) ("In premises security cases . . . plaintiff can recover only if the assailant was an intruder."); *Hierro v. New York City Hous. Auth.*, 123 A.D.3d 508, 509 (1st Dep't 2014) ("[The] plaintiff can recover only if the assailant was an intruder . . . who gained access to the premises through the negligently-maintained entrance . . . as opposed to tenants or invitees." (internal quotations omitted)).

Moreover, Plaintiff's premises liability claim cannot be sustained against the individual defendants, Williams and Novello, for the following additional reason. Even if this claim was properly plead—and it is not—Plaintiff fails to allege anywhere in the Complaint that any of the individual defendants owned or controlled the school premises where Plaintiff alleges the abuse occurred. That is fatal to any claim of premises liability against them. *See, e.g., Balsam v. Delma Eng'g Corp.*, 139 A.D.2d 292, 296 (1st Dep't 1988); *Somers v. Am. Airlines, Inc.*, No. 05-CV-2814 (SMG), 2010 WL 1459381, at *3 (E.D.N.Y. Apr. 13, 2010).

As to Plaintiff's claim alleging breach of a duty *in loco parentis*, it is well established that a school's duty *in loco parentis* is merely an element of a tort claim. *See, e.g., Ferguson v. City of New York*, 988 N.Y.S.2d 207, 208 (2d Dep't 2014) ("Under the doctrine that a school district acts in loco parentis with respect to its minor students, a school district owes a 'special duty' to the students themselves. . . [and] may be held liable to a student when it breaches that duty, *so long as all other necessary elements of a negligence cause of action are established*." (emphasis added)); *Sheila C.*, 11 A.D.3d at 124–25 (treating allegation that defendants acted *in loco parentis* as part of the negligence claim, which requires determination of whether all elements of negligence are satisfied). Further, New York courts have held that the *in loco parentis* standard of care is not absolute. "Schools are not, [absolute] insurers of students' safety and cannot reasonably be expected to continuously supervise and control all movements and activities of students." *Deb B. v. Longwood Cent. Sch. Dist.*, 165 A.D.3d 1212, 1213 (2d Dep't 2018). New York law does not support the imposition of a broad and limitless duty owed by a school to its student body to prevent the terrible abuse alleged by Plaintiff. *See Sheila C.*, 11 A.D.3d at 126 (imposing such duty would create a "likelihood of unlimited or insurer-like liability" (*quoting Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 586 (1994))).

Here, by asserting premises liability and breach of duty *in loco parentis* separate, stand-alone causes of action, Plaintiff mischaracterizes the duty owed by schools and the *in loco parentis* relationship.  *In loco parentis* is the standard by which negligence actions are analyzed, but it "does not create an independent cause of action." *Torrey v. Portville Central Sch.*, No. 88476, 2020 WL 856432, at *3 (Sup. Ct., Cattaraugus Cty. Feb. 21, 2020).  As New York courts have held:

> Schools are not . . . the insurers of their students' safety and there is no duty to provide constant supervision as the level and degree thereof is measured by the reasonableness thereof under the circumstances. The standard for determining whether a school was negligent . . . is whether a parent of ordinary prudence, placed in the same situation and armed with the same information, would have provided greater supervision . . . [and] [w]here the complaint alleges negligent supervision due to injuries related to an individual's intentional acts, the plaintiff generally must demonstrate that BFS knew or should have known of the individual's propensity to engage in such conduct.

*Higgins*, 2019 WL 1504111, at *3.  Imposing a security duty on a school to prevent illegal conduct from occurring on school property would create an immensely expansive and unmitigable risk that would run contrary to the admonition oft repeated by the Court of Appeals that a plaintiff must show "that a defendant owed not merely a general duty to society but a specific duty to him or her, for '[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001) (quoting *Lauer v. City of New York*, 95 N.Y.2d 95, 100 (2000)).

Thus, as a matter of law, Poly did not owe any independent general duty to Plaintiff *in loco parentis* or to provide a safe environment. *See also Pinks v. Turnbull*, No. 100228/04, 2009 WL 4931802, at *4–6 (Sup. Ct., N.Y. Cty. Dec. 11, 2009) (granting motion to dismiss negligent failure to provide a safe and secure environment claim asserted against boys choir); *Campbell v. Brentwood Union Free Sch. Dist.*, 904 F. Supp. 2d 275, 278 (E.D.N.Y. 2012) (granting motion to dismiss claims of high school student based on injuries caused by another student where plaintiff alleged that school failed to provide safe and secure environment).

In short, for the reasons set forth above, New York law does not recognize an <u>independent</u> <u>tort</u> of "breach of duty *in loco parentis*" or of "negligent, reckless, and willful misconduct." Moreover, Plaintiff's premises liability claim is insufficiently and improperly plead.  Accordingly, Plaintiff's separately asserted claims for premises liability, breach of duty *in loco parentis* and negligent, reckless, and willful misconduct (the Complaint's Second, Fourth, and Sixth Counts) all fail to state any claim as a matter of law and should all be dismissed.

### C.      Plaintiff's Claim of Breach of Fiduciary Non-delegable Duty Fails for Multiple Reasons.

Plaintiff's separate claim for "breach of fiduciary non-delegable duty" should be dismissed because, as set forth below: (a) New York courts have consistently found that a school does not owe any general fiduciary duty to its students; (b) Plaintiff fails to plead necessary elements of such a claim, and (c) in any event, Plaintiff's allegations lack the requisite particularity under CPLR 3016(b).

It is axiomatic that, under New York law, "[i]n order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct."  *Kurtzman v. Bergstol*, 40 A.D.3d 588, 590 (2d Dep't 2007); *Ozelkan v. Tyree Bros. Envtl. Servs.*, 29 A.D.3d 877 (2d Dep't 2006); *Pokoik v. Pokoik*, 982 N.Y.S.2d 67 (1st Dep't 2014).

Here, Plaintiff cannot state a claim for breach of fiduciary duty because a school does not owe a fiduciary duty to its students.  *See Gomez-Jimenez v. New York Law School,* 103 A.D.3d 13, 18–19 (1st Dep't 2012) ("A fiduciary relationship does not exist between parties engaged in an arms' length business transaction") (citation omitted), *leave to appeal denied*, 20 N.Y.3d 1093 (2013); *Bevelacqua v. Brooklyn Law School*, No. 500175/2012, 2013 WL 4082674, at *14 (Sup. Ct., Kings Cty. Apr. 22, 2013) ("[T]he relationship between an institution of higher learning and

its students is contractual, rather than fiduciary in nature.") (citation omitted); *Zimmerman v. Poly Prep Country Day School*, 888 F. Supp. 2d 317, 335 n.5 (E.D.N.Y. 2012) ("Though Plaintiffs denominate their claim as one for breach of fiduciary duty, New York courts do not describe the duty of a school to its students as such."); *Moy v. Adelphi Institute, Inc.*, 866 F. Supp. 696, 707–08 (E.D.N.Y. 1994) (holding that allegations of trust and confidence placed in vocational school described a business relationship, not a fiduciary relationship).

Moreover, even if a fiduciary relationship existed—and it did not—Plaintiff's claims of sexual misconduct by Foglietta are not sufficient to sustain a breach of fiduciary duty claim.As a general matter, sexual abuse of a child does "not fall within the protections afforded those in a fiduciary relationship." *Wilson v. Diocese of New York of Episcopal Church*, No. 96-cv-2400, 1998 WL 82921, at *11 (S.D.N.Y. Feb. 26, 1998) (citing *Schmidt v. Bishop*, 779 F. Supp. 321, 325–26 (S.D.N.Y. 1991)); *see also* 92 N.Y. Jur. 2d Religious Organizations § 90 (2020) ("Sexual misconduct is not a breach of fiduciary duty.").

Finally, Plaintiff fails to plead his claim with requisite particularity.  "A cause of action sounding in breach of fiduciary duty must be pleaded with particularity under CPLR 3016(b)." *Swartz v. Swartz*, 145 A.D.3d 818, 823 (2d Dep't 2016); *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 808 (2d Dep't 2011) (citing cases).  Here Plaintiff fails to plead any particularity regarding "the existence of a fiduciary duty" between Plaintiff and Poly.  *Swartz*, 145 A.D.3d at 823.[5]

---

[5] In addition to the foregoing, to the extent that Plaintiff is seeking to cast this Count as alleging a separate claim of "non-delegable duty," such a claim cannot either survive under New York law for two reasons. *First*, no such independent cause of action exists under New York law.  The concept of a "non-delegable duty" arises in the context of an exception to the general rule that "[o]rdinarily, a principal is not liable for the acts of independent contractors."  *Chainani by Chainani v. Bd. of Educ. of City of New York*, 87 N.Y.2d 370, 381 (1995).  One exception to that rule is a non-delegable duty, which consists of "a particular responsibility is imposed upon a

Accordingly, Plaintiff's separate claim for breach of "fiduciary non-delegable duty" (the Complaint's Fifth Count) should be dismissed.

### D.   Plaintiff's Claim for Negligent Infliction of Emotional Distress Cannot Be Sustained.

Plaintiff's claim for negligent infliction of emotional distress must be dismissed as against all Defendants because, under New York law, recovery for emotional injury is permitted only in extremely limited circumstances, which the Complaint does not allege existed with regard to any conduct by the Defendants.  To be clear, Plaintiff's claims of sexual abuse by Foglietta are horrific in nature; however, as a matter of law, Plaintiff fails sufficiently to allege conduct on the part of the Defendants that would allow for recovery as against them for emotional injury under New York law.

A party alleging negligent infliction of emotional distress must plead three necessary elements: (1) extreme and outrageous conduct by a defendant; (2) a causal connection between the alleged conduct and the injury; and (3) severe emotional distress.  *See Simpson v. Uniondale UFSD*, 702 F. Sup. 2d 122, 134 (E.D.N.Y. 2010).  The conduct complained of must be "so extreme in degree and outrageous in character as to go beyond all possible bounds of decency" and to be regarded as "atrocious and utterly intolerable in a civilized society."  *Wolkstein v. Morgenstern*, 275 A.D.2d 635, 636-37, (1st Dep't 2000); *Murphy v. American Home Products Corp.*, 58 N.Y.2d

---

principal by statute or regulation or where the task at issue is inherently dangerous."  *Id.*  "In such instances, . . . the employer is vicariously liable" for the tortious conduct of and independent contractor because "a legal duty is imposed on it which cannot be delegated."  *Rosenberg v. Equitable Life Assur. Soc. of U.S.*, 79 N.Y.2d 663, 668 (1992).  However, there is no independent cause of action for breach of non-delegable duty, and Defendants are not aware of any New York case that has found that such cause of action exists.  *Second*, here, Plaintiff alleges that Foglietta was an employee of Poly (*see, e.g.*, Compl. ¶ 48)—not an independent contractor.  Thus, the theory of a non-delegable duty would not even apply as a basis to support any of Plaintiff's claims that Poly should be liable based on Foglietta's tortious conduct.  *See Chainani by Chainani*, 87 N.Y.2d at 381.

293 (1993).  To survive dismissal, a complaint must "clearly allege" the extreme and outrageous conduct.  *Dillon v. City of New York*, 261 A.D.2d 34, 41 (1st Dep't 1999) (further noting that courts "have applied the same standard to both the intentional and negligence theories of emotional distress").  Moreover, a plaintiff can only recover on a negligent infliction of emotional distress claim where "consequential physical manifestations of trauma exist."  *Lauer v. City of New York*, 95 N.Y.2d 95, 100, 114 (2000) (finding that "[r]equiring physical manifestations, rather than emotional symptoms alone, is thought to provide an index of reliability."); *Elbogen v. Esikoff*, 266 A.D.2d 15, 15 (1st Dep't 1999) (reversing lower court and dismissing emotional distress claim where plaintiff failed to show "any mental or physical symptom or injury that would indicate the existence of severe emotional distress").

Here, Plaintiff fails to allege any conduct on the part of any of the defendants that is "so extreme in degree and outrageous in character as to go beyond all possible bounds of decency." *Wolkstein*, 275 A.D.2d at 636-37; *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 646 (E.D.N.Y. 2013).  Plaintiff also fails to plead that he suffered any "physical manifestations of trauma" as a consequence of the severe emotional distress he allegedly experienced, let alone that he suffered an *immediate* physical manifestation of harm *as a direct result* of any of the Defendants' alleged conduct, is fatal to his emotional distress claim.  *See Lauer*, 95 N.Y.2d at 114; *McDonagh v. Carmel Cent. Sch. Dist.*, 170 A.D.3d 1161, 1161 (2d Dep't 2019); *see also Herskovitz v. Equinox Holdings*, *Inc.*, No. 151065/2013, 2013 WL 2642956, at *8 (Sup. Ct., N.Y. Cty. June 3, 2013) (defendant employer not liable for either negligent hiring or intentional infliction of emotional distress).

The New York Court of Appeals affirmed dismissal of emotional distress claims *as a matter of law* in circumstances far more egregious than Plaintiff's allegations concerning

Defendants.  *See Marmelstein v. Kehillat New Hempstead*, 11 N.Y.3d 15, 22–23 (2008) (allegations that congregation's rabbi engaged in sexual relationship with a woman as "sexual therapy" to assist in her efforts to marry and have a family, and threatened to have her "placed in a straight jacket" and banned from synagogue if she exposed the relationship did not rise to the level of extreme and outrageous conduct).

Accordingly, Plaintiff's claim of negligent infliction of emotional distress (the Complaint's Third Count) must be dismissed.

### E.     Plaintiff's Claim Alleging Breach of a Statutory Duty to Report Cannot Survive As a Matter of Law.

#### 1.     *Plaintiff Cannot State a Claim Under N.Y. Soc. Serv. Law §§ 413 & 420.*

In the Seventh Count, Plaintiff claims that Defendants breached their statutory duty under N.Y. Soc. Serv. Law §§ 413 and 420 "to report reasonable suspicion of abuse of children in their care."  (Comp. ¶¶ 211–12.)  However, Plaintiff's perfunctory allegation is insufficient to state such a claim as against Defendants because, as set forth below: (a) New York Social Services Law only imposes a reporting duty on specified individuals and not on institutions such as Poly; (b) the Complaint does not allege that any of the two individual defendants were ever aware—or even had a reasonable suspicion—of Plaintiff's abuse by Poly; and (c) Foglietta, as a faculty member of a non-residential school such as Poly, cannot as a matter of law be the "subject" of a report under the statute.

Section 413 of the New York Social Services Law, imposes a reporting obligation on specific classes of "persons and officials."  Specifically, during the relevant period of time, the following persons and officials were required to "report or cause a report to be made . . . when they ha[d] reasonable cause to suspect that a child coming before them in their professional or official capacity [was] an abused or maltreated child:

> any physician, surgeon, medical examiner, coroner, dentist, osteopath, optometrist, chiropractor, podiatrist, resident, intern, registered nurse, hospital personnel engaged in the admission, examination, care or treatment of persons, a Christian Science practitioner, school official, social services worker, day care center worker or any other child care or foster care worker, mental health professional, peace officer or law enforcement official.

N.Y. Social Services Law § 413.[6]  Notably, neither institutions, including schools, are listed as mandated reporters. *See Monaghan v. R.C. Diocese of Rockville Ctr.*, 165 A.D.3d 650, 653 (2d Dept 2018).  Thus, under the express language of the reporting statute, Poly is not a mandated reporter and *ipso facto* could not have violated any duty to report.

Additionally, pursuant to the statute, an "abused child" is defined as "a child under sixteen years of age defined as an abused child by the family court act."  N.Y. Social Services Law § 413. Pursuant to Section 1012 of the Family Court Act, an abused child is defined as a child who suffers harm, in part, by a "person legally responsible for his care."  N.Y. CLS Family Ct Act § 1012. However, in New York, persons who assume "fleeting or temporary care . . . or those persons who provide extended daily care of children in institutional settings, such as *teachers*" are not "person[s] legally responsible for the child's care."  *In re Yolanda D.*, 88 NY2d 790, 796 (1996) (emphasis added).  Moreover, the New York State Education Department has interpreted section 413 to be inapplicable where the school does not board students and where the abuse is alleged to have occurred on the premises.  The agency expressly stated,

> For all non-residential schools and for all other residential schools, school staff cannot be subjects of reports.  Accordingly, school staff of such schools would not be mandated to report alleged abuse or maltreatment of a child by another school staff, as the school staff are outside the purview of the child protective system in their role as school staff.

---

[6] Here, the abuse is alleged to have occurred between 1976 and 1983, therefore, the statutory language quoted is from the statute in effect at that time.  *See* New York Laws available at https://babel.hathitrust.org/cgi/pt?id=uc1.b4378138&view=1up&seq=1190.

*See* "Mandated Reporters of Child Abuse and Neglect - Nonpublic Schools in New York State," http://www.p12.nysed.gov/nonpub/running/qa-mandated-reporters.html (last visited December 18, 2020).

Accordingly, under the Social Services Law, the reporting obligation only could have applied, if at all, to a member of Poly's staff and not to Poly itself as a school (institution). Moreover, as stated above, the Complaint does not allege that any of the two individual defendants, Williams or Novello, were ever aware—or even had a reasonable suspicion—of Plaintiff's abuse by Poly. To the contrary, the only allegation in the Complaint regarding any notice of Plaintiff's alleged abuse was an alleged report Plaintiff made to Morangelli, his homeroom and music teacher, who is not a named defendant in this action. (Compl. ¶ 61.) Thus, according to the allegations of the Complaint, there is no factual basis for any of the Defendants to have had a reasonable suspicion that Plaintiff was being abused. Finally, and in any event, under the New York State Education Department's interpretation, Foglietta could not be the subject of a statutory report based on abuse that occurred at Poly, a non-boarding school.

### 2. *In Any Event, This Claim is Time-Barred and Not Revived Under the CVA.*

In addition to the foregoing, and to the extent that the Court is not inclined to dismiss this Count for the reasons set forth above, Plaintiff's claim alleging a statutory failure to report must be dismissed for the additional reason that it is time barred and has not been revived under the CVA.

Under New York law, an action to recover damages for personal injury must be commenced within three years. CPLR § 214(5). The CVA solely revived only those causes of action:

> . . . alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of **conduct which**

**would constitute a sexual offense as defined in article one hundred thirty of the penal law** . . . .

CPLR § 214-g. Nowhere does the revival statute indicate or expressly state the Legislature's intent to revive claims based on a violation of any other statutory provision, including the Social Services Law. *Cf. Poppel v. Estate of Archibald*, No. 19-cv-01403, 2020 WL 2749719, at *3 (S.D.N.Y. 2020) (noting that CVA revival statute expressly revived only those claims predicated on a violation of certain New York Penal Law provisions). Moreover, here, the Complaint does not contain any factual claims, as opposed to a bare, conclusory allegation, that he suffered any harm as a result of Defendant's alleged failure to report. Thus, under the express language of the CVA's revival statute, Plaintiff's claim for an alleged statutory failure to report under the New York Social Services Law has not been revived.

*     *     *

For all of these reasons, the Court should dismiss the Seventh Count, alleging a violation of the New York Social Services Law, as against all of the Defendants.

### III. MOST OF PLAINTIFF'S MULTIPLE TORT CLAIMS FAIL FOR THE ADDITIONAL REASON THAT THEY ARE ALL IMPERMISSIBLY DUPLICATIVE.

Plaintiff's Second, Third, Fourth, Fifth and Sixth Counts are all based on the same factual allegations and seek the same relief as Plaintiff's First Count for negligent hiring, retention, supervision, and direction. They are thus impermissibly duplicative and should be dismissed for this additional and independent reason.

Under well-established New York law, a Plaintiff may not recover on multiple causes of action where the factual basis of the claims is the same, and therefore the causes of action are duplicative. *See NYAHSA Servs. Inc. v. People Care Inc.*, 167 A.D.3d 1305, 1309 (3d Dep't 2018) ("Causes of action that are based on the same set of facts and theories and seek identical damages

32

are duplicative of one another and must be dismissed."); *Higgins*, 2019 WL 1504111, at *5 (dismissing duplicative negligence-based claims because "[e]ach of the duplicative causes of action are merely allegations of negligent supervision recast in different language, or merely address one aspect of the supervision allegedly required to be provided by the defendants, or separately address the lack of supervision"); *see also Afifi v. City of New York*, 104 A.D.3d 712, 713 (2d Dep't 2013) (citing cases).

Here, all of Plaintiff's claims are based on the same set of facts and rely on the same theory that Defendants were allegedly negligent in their supervision and retention of Foglietta.  In fact, the additional causes of action all expressly incorporate the factual allegations of each of the prior negligence causes of action and do not allege any new facts.  These claims are plainly premised solely upon the identical allegations and claimed conduct as Plaintiff's First Count alleging negligent supervision and retention.

Under these circumstances, New York Courts have specifically held, including in cases involving allegations of sexual abuse against employers for acts of their employees, that such duplicative claims are impermissible and must be dismissed.  *See, e.g.*, *Torrey*, 2020 WL 856432, at *3 (dismissing negligent and intentional infliction of emotional distress claims because those causes of action were duplicative of the negligent hiring, supervision, and retention claims); *Bauver v. Commack Union Free School Dist.*, No. 10-13877, 2014 WL 1867328, at *1 (Sup. Ct., Suffolk Cty. May 1, 2014) (dismissing cause of action against school for breach of the duty to care for students as duplicative of cause of action for negligent supervision.); *Wolkstein v. Morgenstern*, 275 A.D.2d 635, 635–37 (1st Dep't 2000) (dismissing duplicative cause of action for negligent infliction of emotional distress); *NYAHSA Servs. Inc.*, 167 A.D.3d at 1309 (dismissing breach of fiduciary duty claim as duplicative of negligence claim); *Weil, Gotshal & Manges, LLP v. Fashion*

*Boutique of Short Hills, Inc.*, 10 A.D.3d 267, 271 (1st Dep't 2004) (dismissing breach of fiduciary duty claim as duplicative of legal malpractice claim").

Accordingly, Plaintiff's Second, Third, Fourth, Fifth and Sixth Counts—alleging, respectively: negligent, reckless, and willful misconduct; negligent infliction of emotional distress; premises liability; breach of fiduciary non-delegable duty; and breach of duty *in loco parentis*— should all be dismissed for the additional and independent reason that they are all impermissibly duplicative of Plaintiff's First Count alleging negligent hiring, retention and supervision.

## IV.    THE COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY *AS AGAINST NOVELLO* FOR FAILING TO STATE A SINGLE FACTUAL ALLEGATION CONCERNING ANY NEGLIGENT CONDUCT BY HIM.

Specifically with regard to Novello, it cannot be overstated that the Complaint is utterly bereft of a single factual allegation concerning any negligent actions or omissions on his part that could serve as a basis for including Novello as a defendant in this action.  The extent of Plaintiff's allegations concerning Novello are Plaintiff's vague, speculative, and conclusory assertions that "Defendant Williams has testified [in the 2009 *Zimmerman* action] that **he believed** that he discussed Marino's accusations **with Parker or Defendant Novello**." (Compl. ¶ 109 (emphasis added)) and that "[o]n information and belief, prior to and/or by the time of Plaintiff's abuse by Foglietta, Defendant Novello had been advised of reports of Foglietta's sexually abusing students." (Compl. ¶ 110.)

Such bare conclusory allegations fall far short of the minimal pleading requirements under *Iqbal* and *Twombly* and is insufficient to sustain any claim sounding in negligence as against Novello.  *E.g. Twombly*, 550 U.S. at 555 (factual allegations must "raise a right to relief above the speculative level").  Absent any factual allegations regarding notice by Novello, Plaintiff's negligence claims, including that of negligent supervision and direction, cannot survive as against him under New York law.  *See, e.g.*, *Shor v. Touch-N-Go Farms, Inc.*, 89 A.D.3d 830, 831 (2d

Dep't 2011).  Accordingly, based on the fundamental principles of law, bedrock New York law and minimal federal pleading standards, even if all of Plaintiff's claims are accepted as true for purposes this motion, Plaintiff entirely fails sufficiently to plead <u>any</u> claim as against Novello, and the Complaint must be dismissed as against Novello, in its entirety, for this reason.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss each of the claims asserted in Plaintiff's Complaint, with prejudice.

Dated: December 18, 2020                                   Respectfully submitted,

**SEYFARTH SHAW LLP**

By: */s/ Karen Y. Bitar*
    Karen Y. Bitar
    Gershon Akerman
    Matthew Catalano
    Vladislava Feldman
620 Eighth Avenue, 32nd Floor
New York, NY 10018
Tel. No.: (212) 218-5500
Fax No.: (212) 218-5526
kbitar@seyfarth.com
gakerman@seyfarth.com
mcatalano@seyfarth.com
vfeldman@seyfarth.com

*Attorneys for Defendants*