UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

PC-41 DOE,                                       :
                                                 :
                          Plaintiff,             :       Civil Action No. 20-cv-03628-DG-SJB
                                                 :
                vs.                              :
                                                 :
POLY PREP COUNTRY DAY SCHOOL;                    :
WILLIAM WILLIAMS;                                :
MICHAEL NOVELLO,                                 :
                                                 :
                          Defendants.            :
                                                 :
-------------------------------------------------------- X


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**


Date of service:  March 16, 2021            **SEYFARTH SHAW LLP**

                                                 Karen Y. Bitar
                                                 Gershon Akerman
                                                 Matthew Catalano
                                                 Vladislava Feldman
                                            620 Eighth Avenue, 32nd Floor
                                            New York, NY 10018
                                            Tel. No.: (212) 218-5500
                                            Fax No.: (212) 218-5526
                                            kbitar@seyfarth.com
                                            gakerman@seyfarth.com
                                            mcatalano@seyfarth.com
                                            vfeldman@seyfarth.com

                                            *Attorneys for Defendants*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.    THE CVA VIOLATES THE NEW YORK STATE CONSTITUTION'S
DUE PROCESS CLAUSE. ........................................................................... 1

II.    ALL OF PLAINTIFF'S CLAIMS MUST BE DISMISSED, IN WHOLE
OR IN PART, BECAUSE THE COMPLAINT FAILS TO STATE ANY
CLAIM........................................................................................................... 5

    A.    Plaintiff Concedes that He Cannot State a Negligent Hiring Claim
Concerning Foglietta's Hiring in 1966. ...................................... 5

    B.    Plaintiff Fails Sufficiently to Plead the Second-Through-Seventh
Counts. ........................................................................................ 5

    C.    Most of Plaintiff's Multiple Tort Claims Are Impermissibly
Duplicative. ................................................................................ 9

III.    PLAINTIFF'S OPPOSITION CONFIRMS THAT THE COMPLAINT IS
BEREFT OF ANY FACTUAL ALLEGATIONS CONCERNING
WRONGFUL CONDUCT BY NOVELLO, NECESSITATING
DISMISSAL AS AGAINST HIM. ................................................................ 9

CONCLUSION............................................................................................................... 10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................10

*Burgos v. Aqueduct Realty Corp.*,
  92 N.Y.2d 544 (1998) ...............................................................................................7

*Doe v. Hartford Roman Catholic Diocesan Corp.*,
  317 Conn. 357 (2015) ................................................................................................4

*Dolgas v. Wales*,
  Index No. E2019-2255 (Sup. Ct. Sullivan Co. 2020) ...............................................2

*Giuffre v. Dershowitz*,
  No. 19-cv-3377, 2020 WL 2123214 (S.D.N.Y. Apr. 8, 2020) .............................2, 3

*Graber v. Bachman*,
  27 A.D.3d 986 (3d Dep't 2006) ...............................................................................6, 7

*Kenneth R. v. Roman Cath. Diocese of Brooklyn*,
  229 A.D.2d 159 (2d Dep't 1997) ..............................................................................5

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*,
  35 N.Y.3d 332, 154 N.E.3d 972 (2020) ...................................................................3

*Torrey v. Portville Central Sch.*,
  No. 88476, 2020 WL 856432 (Sup. Ct. Cattaraugus Cty. Feb. 21, 2020) ................2

*Werner v. Diocese of Rockville Ctr.*,
  2020 N.Y. Misc. LEXIS 2003 (N.Y. Sup. May 11, 2020) .......................................2

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
  30 N.Y.3d 377 (2017) ................................................................................................3

*Zumpano v. Quinn*,
  6 N.Y.3d 666 (2006) ......................................................................................1, 2, 3, 4

**Statutes**

New York Social Services Law ...........................................................................................8

**Other Authorities**

Glen Feinberg, *What Is the Standard of Care That Applies to a Case Brought Under the Child Victims Act?*, New York Law Journal, February 11, 2021, available at https://www.law.com/newyorklawjournal/2021/02/11/what-is-the-standard-of-care-that-applies-to-case-brought-under-the-child-victims-act/ ............................7

## PRELIMINARY STATEMENT

Defendants respectfully submit this Reply Memorandum of Law in further support of their motion to dismiss the Complaint, in its entirety, and with prejudice.  First, at its core, the CVA is unconstitutional under New York State's due process clause.  As set forth below, Plaintiff's arguments in opposition do not withstand scrutiny.  Moreover, with regard to Defendants' substantive arguments, the opposition confirms, despite its distortion of factual allegations in the Complaint and applicable law (largely ignoring the authority cited in Defendants' brief), that part of Plaintiff's First Count and his Second-through-Seventh Counts should be dismissed on substantive grounds.  Plaintiff concedes that there are no allegations of notice regarding Foglietta prior to when Poly hired him and that there are no allegations of notice as to Novello.  This is essentially an action for negligent retention and supervision, and Defendants have not sought to dismiss that claim on substantive grounds at this pleading stage.  All of Plaintiff's other claims, however, are improperly and/or insufficiently pled and should be dismissed.[1]

## ARGUMENT

### I.    THE CVA VIOLATES THE NEW YORK STATE CONSTITUTION'S DUE PROCESS CLAUSE.

For a century, when the Court of Appeals upheld statutes reviving expired claims over the competing interest of New York State's due process clause, it did so for cases which shared a common thread: a total and practical inability to bring a timely claim.  The Court of Appeals already considered the question of whether plaintiffs in child sexual abuse cases could have potentially brought a timely claim, and decisively found that they could.  *See Zumpano v. Quinn*, 6 N.Y.3d 666, 675 (2006).  The inquiry should end there: the CVA is unconstitutional.  Plaintiff's arguments to the contrary are unavailing.

---

[1] Plaintiff, in his opposition, has withdrawn the Fifth Count ("breach of fiduciary non-delegable duty").

*First*, Plaintiff's reliance on a handful of trial-court level decisions finding the CVA to be constitutional is misplaced.  Opp. at 13–14.  There are presently over a thousand CVA cases throughout New York State.  Some have advanced to where a judge has ruled on a motion to dismiss, most have not.  None of these decisions are binding on this Court, which can, and should, disagree with the analysis of these other courts, as the cases were wrongly decided.  Either they did not engage with *Zumpano* at all (*Giuffre v. Dershowitz*, No. 19-cv-3377, 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020) (also involving more lenient motion-to-amend standard rather than motion to dismiss); *Torrey v. Portville Central Sch.*, No. 88476, 2020 WL 856432, at *4–*5 (N.Y. Sup. Ct. Feb. 21, 2020)) or they did not address *Zumpano*'s actual holding, *i.e.*, that plaintiffs' claims could have been timely brought, and instead took *Zumpano*'s dicta as an invitation to rubber-stamp the legislature (*Werner v. Diocese of Rockville Ctr.*, 2020 N.Y. Misc. LEXIS 2003, *15 (N.Y. Sup. Ct. May 11, 2020) (and other cases brought against Rockville Center in the same court); *Dolgas v. Wales*, Index No. E2019-2255 (Sup. Ct. Sullivan Co. 2020) (Opp. Ex. E)).

*Second*, Plaintiff's characterization of Magistrate Bulsara's decision in this action to deny a discovery stay is misleading, and in any event Magistrate Bulsara's reasoning relied on a demonstrable error in *Giuffre*.  ECF No. 24.  Magistrate Bulsara was not tasked with deciding, and did not decide, Defendants' present motion to dismiss.  Rather, his comments on Defendants' constitutionality argument were in the context of the first factor of whether to issue a discovery stay, *i.e.*, "whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious."  *Id.* at 1.  He expressly acknowledged that Defendants' constitutionality argument "has yet to be addressed in this case," and chiefly relied on the SDNY's *Giuffre* decision which found "[t]he New York Courts' historical skepticism of claim-revival provisions appears to be just that: historical."  *Id.* at 2 (quoting *Giuffre*, 2020 WL 2123214, at *2).  But as explained in

Defendants' opening Memorandum of Law ("Def.'s Br."), the *Giuffre* Court was in error, as the Court of Appeals' *Regina* decision, issued just one week before *Giuffre*, had quoted and adopted Justice Cardozo's "historical" language.  Def.'s Br. at 14; *see Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 371, 154 N.E.3d 972, 992 (2020).[2]

*Third*, Plaintiff sidesteps the core holding of *Zumpano* which, when read in the context of New York Court of Appeals' decisions on claim-revival statutes, shows that the CVA is unconstitutional.  Plaintiff cannot dispute that previous Court of Appeals' decisions upholding the New York legislature's exercise of the "extreme" revival power all, uniformly, involved statutes that were written to address and remedy situations that caused a practical and total inability to bring a timely claim.  *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 399–400 (2017) ("In *Robinson*, it was the plaintiffs' exclusive reliance on a provision of the workers' compensation law that was struck down by the United States Supreme Court . . .; in *Gallewski*, it was the occupation of the plaintiffs' countries of residence during World War II . . . ; in *Hymowitz* and *McCann*, it was latent injuries caused by harmful exposure, which the plaintiffs were not able to attribute to an action or omission of the defendant until the statutory period to bring a claim had already expired.").  The *Zumpano* Court shows that, as a matter of New York law, the CVA stands apart from the statutes at issue in these other cases, as it involves circumstances in which a plaintiff could have, but did not, bring a claim.  *See Zumpano*, 6 N.Y.3d at 676–77 ("[Zumpano] contends that defendants should be equitably estopped from asserting the statute of limitations since their misconduct caused his insanity.  This argument also lacks merit

---

[2] Plaintiff's emphasis of a different quote from *Regina*, that "[w]hen the Legislature has intended to revive time-barred claims, it has typically said so unambiguously, providing a limited window when stale claims may be pursued" (Opp. at 20, n.7.), is a red herring, as this sentence does not mitigate the fact that retroactivity is an "extreme exercise of legislative power" or imply that a legislature can freely exercise such power by merely expressing its intent; rather, it merely stands for the unremarkable proposition that any given statute would not otherwise be construed as applying retroactively without a clear statement of legislative intent.

as he fails to establish a continuing disability.  The record reflects that, as an adult, Zumpano held a full-time job for nine years.  He also successfully prosecuted a personal injury action on his own behalf in 1986.  **As a matter of law, these facts contradict the assertion that Zumpano suffered from an ongoing mental disability and was unable to protect his rights**.") (emphasis added).[3] The passing statement by the *Zumpano* Court that "[a]ny exception to be made to allow these types of claims to proceed outside of the applicable statutes of limitations would be for the Legislature," is acknowledged by Plaintiff to be dicta.  Opp. at 20 (quoting *Zumpano*, 6 N.Y. 3d at 677).  The question of the constitutionality of any such legislation was not before the *Zumpano* Court.

*Fourth,* Plaintiff's reliance on out-of-state decisions applying a federal due process analysis (Opp. at 23–24) is misplaced; those cases are inapplicable to a state like New York with a stricter interpretation of its due process clause.  *See Doe v. Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 428 (2015) (collecting cases showing that New Jersey, Connecticut, California, Minnesota, Hawaii, Montana, Arizona, and Delaware, relied on by Plaintiff, follow the federal due process analysis).  Plaintiff also points to the District of Columbia, which follows the federal constitution and is not a state.  Plaintiff's inclusion of South Dakota and Vermont are erroneous, as those states rejected revival statutes based on other state law grounds.  *Id.* at 430–31.

*Finally*, Plaintiff takes issue with what should be a common-sense proposition: it is unfair and prejudicial for Defendants to face a revived claim with a statute of limitations that had already run.  Opp. at 15.  It is apparent that defendant institutions now facing CVA claims had made prior decisions as to what records to keep and how to maintain them and other strategic decisions without considering that a sexual abuse claim that would have expired decades ago might arise.

---

[3] Defendants are certainly sympathetic to the psychological research alluded to by Plaintiff suggesting that sexual abuse claims are underreported.  Opp. at 24–27  But these precise arguments were considered and rejected by the Court of Appeals in *Zumpano*.  The materials cited by Plaintiff (including cases and articles from the 1980's through early 2000's) would have been available to the *Zumpano* Court.  *Id.*

## II.    ALL OF PLAINTIFF'S CLAIMS MUST BE DISMISSED, IN WHOLE OR IN PART, BECAUSE THE COMPLAINT FAILS TO STATE ANY CLAIM.

As set forth in Defendants' opening brief, other than that portion of Plaintiff's First Count alleging negligent retention and supervision, all of Plaintiff's other claims, including his claim for negligent hiring (included in the First Count), should be dismissed for the failure to state any claim.

### A.    Plaintiff Concedes that He Cannot State a Negligent Hiring Claim Concerning Foglietta's Hiring in 1966.

Defendants established, in their opening brief, that Plaintiff cannot state any claim for negligent hiring because there are no allegations of a propensity by Foglietta as a prospective employee prior to being hired by Poly in 1966.  In opposition, Plaintiff does not dispute that there are no such allegations concerning Foglietta.  Yet, Plaintiff seeks to maintain his negligent hiring claim by recasting it, not as one of negligent hiring a protective employee but, instead, as negligent "renewal of contract" of an existing employee, arguing that every time Poly renewed Foglietta's contract, it was again hiring him.  Opp. at 28–29.  Plaintiff's argument is absurd.  By definition, the tort of negligent hiring pertains to hiring a perspective employee.  *See, e.g.*, *Kenneth R. v. Roman Cath. Diocese of Brooklyn*, 229 A.D.2d 159, 163 (2d Dep't 1997) (negligent hiring pertains to a "perspective employee").  Plaintiff does not cite any authority in support of his new argument that negligent hiring can apply to renewing a contract, and his insistence that negligent hiring apply to Foglietta's alleged post-hire acts—which fit squarely within Plaintiff's negligent retention claim—defies logic.  *See also* Compl. ¶ 90 ("Poly Prep **continued to employee** Foglietta for decades after 1966" (emphasis added)).  Plainly, Plaintiff has not stated, and cannot state, a claim for negligent hiring, and that portion of his First Count must be dismissed.

### B.    Plaintiff Fails Sufficiently to Plead the Second-Through-Seventh Counts.

For the reasons set forth in Defendants' opening brief, and as discussed below, the Complaint's Second-through-Seventh Counts fail to state any claim and cannot be sustained.  In

opposition, Plaintiff withdrew the Fifth Count, but otherwise argues that the Second, Third, Fourth, Sixth and Seventh Counts should survive.  Plaintiff's arguments cannot save these claims.

Plaintiff argues that his claim for "negligent, reckless, and willful misconduct" (the Second Count) is proper because it alleges that Poly put children in danger and "impliedly represented" that Foglietta was not a danger.  Opp. 30–31.  But Plaintiff does not proffer any different theory of liability to support this claim.  Nor does plaintiff assert any duty separate or different than Plaintiff's negligent retention and supervision claim.  Simply put, the issue here is not whether, as a general proposition, New York law recognizes a general negligence claim, but whether Plaintiff has sufficiently made out a negligence claim different than his first-pled claim.  He has not.

Regarding Plaintiff's claim for negligent infliction of emotional distress (the Third Count), Plaintiff asserts that it should not be dismissed based on the "profound" and "horrific" nature of Plaintiff's alleged abuse by Foglietta and because there has not yet been any discovery.  Opp. at 34–35.  Both arguments fail because, as set forth in Defendants' opening brief, to plead this claim, Plaintiff must allege (a) conduct by Defendants—not by Foglietta—"so extreme in degree and outrageous in character as to go beyond all possible bounds of decency"; and (b) immediate physical manifestation of harm resulting directly from Defendants' alleged conduct.  Def.'s Br. at 27–28 (quoting *Wolkstein*).  Plaintiff does not address the latter argument at all, let alone show how any conduct *by Defendants* directly put Plaintiff in imminent fear of harm.  As to the former, Plaintiff does not point to any allegations in the Complaint that "clearly allege" "extreme and outrages conduct" *by Poly* with regard to Foglietta's alleged abuse of Plaintiff—all the factual allegations regarding notice to the Poly administration pertain to other students, not Plaintiff.

The two cases cited by Plaintiff, *Graber* and *Ferara*, do not compel a different result. *Graber* in fact supports Defendants' position that this claim should be dismissed.  In *Graber*, the

court dismissed the negligent infliction of emotional distress claim, finding, as here, that at the time of the alleged abuse, the plaintiff was not contemporaneously aware of the defendant's alleged conduct, the defendant had not put the plaintiff "in imminent fear for her safety," and there was no physical injury.  *Graber v. Bachman*, 27 A.D.3d 986, 988–89 (3d Dep't 2006).[4]  Moreover, Plaintiff ignores the case law cited by Poly in its moving brief, including demonstrating that courts have rejected emotional distress claims in circumstances far more egregious than alleged with respect to Defendants' conduct.  Def.'s Br. at 28–29.[5]

As to Plaintiff's claim of premises liability (the Fourth Count), Plaintiff argues that this claim is proper because Poly, as a property owner, can be liable for third-party criminal acts that occur on its school premises.  Opp. at 31.  However, Plaintiff ignores the New Court of Appeals' decision in *Burgos v. Aqueduct Realty Corp.*, cited in Defendants' opening brief, which held that "[i]n premises security cases . . . plaintiff can recover only if the assailant was an intruder."  92 N.Y.2d 544, 551 (1998).  That is not the case here, where Plaintiff alleges abuse by a teacher, not an intruder.  Plaintiff's reliance on *Nallan* and *Jaume* is misplaced.  *Nallan* is a classic cases of premises liability involving harm by a third-party intruder.  In *Jaume*, which also did not involve facts similar in any way to Plaintiff's claims, the court dismissed the premises liability claim.  At best, *Jaume* stands for general propositions of premises liability law.  It does not compel a different result.[6]  Moreover, Plaintiffs' argument particularly fails with respect to Williams and Novello,

---

[4] *Ferara*, a 1958 case cited by Plaintiff, stands for a general proposition that New York recognizes and protects "mental anguish" injuries where a physician commits malpractice in falsely indicating possible cancer.

[5] This is particularly true, as has been widely discussed, where plaintiffs are seeking to impose modern notions of negligence and standards of care on decades-old conduct, in place of applying well-accepted standards of care during such periods.  *See generally* Glen Feinberg, *What Is the Standard of Care That Applies to a Case Brought Under the Child Victims Act?*, NEW YORK LAW JOURNAL, February 11, 2021, available at https://www.law.com/newyorklawjournal/2021/02/11/what-is-the-standard-of-care-that-applies-to-case-brought-under-the-child-victims-act/.

[6] The unreported lower court decision in *PB-31 Doe*, also relied upon by Plaintiff and annexed to Plaintiff's opposition as Exhibit G, addresses a completely different issue—whether the CVA revived claims of premises liability. That

who are not owners, and Plaintiff fails to provide any factual support for his implausible implication that they had any *individual* legal duty to operate or control the school premises.

Next, Plaintiff all but concedes that his separate claim of breach of duty *in loco parentis* (Sixth Count), is not a cognizable, independent cause of action, but calls that a "distinction without a difference." Opp. at 33. Yet, there is a very practical difference, which is whether or not Plaintiff can plead an independent case of action claim for alleged breach of this duty, when that is the very duty that forms the basis for Plaintiff's negligent retention and supervision claim (First Count). Moreover, contrary to Plaintiff's argument, Defendants never disputed that schools owe a duty to supervise students in their care. But Plaintiff does not dispute that a school's duty *in loco parentis* is merely an element of a negligence claim—not an independent cause of action. As Plaintiff expressly acknowledges, in addition to duty, any negligence claim requires that Plaintiff plead the elements of breach, proximate causation, and injury. Opp. at 30.

Finally, concerning Plaintiff's claim for statutory failure to report (Seventh Count), in their opening brief, Defendants established that this claim fails for four independent reasons: (a) New York Social Services Law only imposes a reporting duty on specified individuals—not institutions such as Poly; (b) the Complaint does not allege that any of the two individual defendants were ever aware—or even had a reasonable suspicion—of Plaintiff's abuse by Foglietta; (c) Foglietta, as a faculty member of a non-residential school such as Poly, cannot as a matter of law be the "subject" of a report under the statute; and (d) the CVA did not revive this claim. Def.'s Br. at 29–31.

In response, Plaintiff fails to directly respond to any of these specific arguments raised by Defendants. Instead, he points to a few unreported, lower level court decisions by two judges that have found that such a claim is proper in CVA cases. Opp. at 35–36. However, none of those

---

decision does not discuss the issue before this Court of whether Plaintiff's claim of premises liability is properly stated against a school based on alleged conduct by a teacher.

decisions address Defendants' second and third argument—the lack of any factual allegations that either Williams or Novello were ever aware of Plaintiff's abuse, thereby triggering a reporting duty, or that the statutory reporting duty does not apply to a non-residential school such as Poly.

### C.    Most of Plaintiff's Multiple Tort Claims Are Impermissibly Duplicative.

Even if the Court finds that Plaintiff has sufficiently pled each of his claims, the Second, Third, Fourth and Sixth Counts should all be dismissed as impermissibly duplicative. *See* Def.'s Br. at 32–34.  Plaintiff argues, in opposition, that these claims are not duplicative because courts allow a party to plead differing theories of liability.  Opp. at 37.  Plaintiff's argument is belied by the allegations in the Complaint.  A reading of Plaintiff's claims shows that Plaintiff does not allege or offer alternative theories of liability; rather, Plaintiff's separate counts are founded on the same exact theory of liability—Defendants' alleged negligent supervision and continued retention of Foglietta after Poly allegedly had notice of his propensity to abuse students.  The claims also all seek identical relief.  Simply, Plaintiff fails to plead any different factual allegations in support of these claims, let alone allegations that would support some other theory of tort liability, as Plaintiff now claims in opposition.  Thus, these claims are impermissibly duplicative.

### III.    PLAINTIFF'S OPPOSITION CONFIRMS THAT THE COMPLAINT IS BEREFT OF ANY FACTUAL ALLEGATIONS CONCERNING WRONGFUL CONDUCT BY NOVELLO, NECESSITATING DISMISSAL AS AGAINST HIM.

In their opening brief, Defendants demonstrated that, with regard to Novello, all of Plaintiff's claims must be dismissed for the simple reason that there is not a single factual allegation in the Complaint asserting any negligent conduct by Novello with respect to Foglietta or Plaintiff.  Def.'s Br. at 34–35.  In opposition, Plaintiff does not dispute that there are no factual allegations asserting that Novello had prior notice of any misconduct by Foglietta.  Opp. at 38.  Yet, Plaintiff insists that he is a proper defendant because, according to Plaintiff, since Novello (who was an administrator at Poly while Plaintiff was a student) *could* have been aware that

Foglietta was abusing Plaintiff or other students, therefore, he *must* have been aware.  Opp. 37–38.  Plaintiff's argument fails.

To plausibly state a claim against any individual defendant, the Complaint must contain factual allegations—not mere legal conclusions—concerning that individual defendant that supports each element of an asserted claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Yet, Plaintiff admits that the only factual allegations about Novello concern his position and duties at Poly.  *See* Opp. 37–38 (citing Complaint paragraphs).  Plaintiff does not point to any allegations concerning conduct by Novello, let alone factual allegations that could plausibly support the necessary elements of breach or causation of any claim asserted against him.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in Defendants' opening brief, Defendants respectfully request that the Court dismiss Plaintiff's Complaint, in its entirety, and with prejudice.

Dated: March 16, 2021                              Respectfully submitted,

                                                   **SEYFARTH SHAW LLP**

                                                   By: */s/ Karen Y. Bitar*
                                                   Karen Y. Bitar